GUSTAVO T. LUNA/09054-051
OAKDALE-FCI
P.O. Box 5000
Oakdale, La 71463

**FILED**

DEC - 7 2006

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF COLUMBIA

CASE NUMBER  1:06CV02085

JUDGE: Richard W. Roberts

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 12/07/2006

GUSTAVO T. LUNA,                    )
                                    )
      Petitioner,               )
                                    )
                                    )
vs.                                 )
                                    )
ALBERTO GONZALES, esq.,             )
Attorney General For The            )
"UNITED STATES,"                    )
                                    )
      and                       )
                                    )
HARLEY G. LIPPIN, Dir.,             )
Federal Bureau of Prisons,          )
                                    )
      Respondents.              )
                                    )
_____)

**PETITION FOR**
**COMMON LAW**
**WRIT OF HABEAS CORPUS**
**BY A PERSON IN**
**FEDERAL CUSTODY**

28 USC §2241

## CONVICTION UNDER ATTACK

1. Name and location of the court which entered the judgment of conviction under attack:

   **UNITED STATES DISTRICT COURT OF WESTERN MISSOURI**

2. date of judgment of conviction was entered:

3. Case number:  **6:05CR03107-RED**

4. Type and length of imposed sentence:  **240 months**

5. Are you presently serving a sentence imposed for a conviction toher than the conviction under attack? ___ Yes  **X** No

6. Nature of the offencse involved (all counts):
   **Title 21 §841(a)(1) and (b)(1)(A), and Title 18 §2**

7. What was your plea?
   (Check one) **X** Not Gulity ___ Gulity ___ Nolo Contenders

8. If you entered a plea of guilty to one count or indictment,
   and a not guilty plea to another count of indictment give
   details: **N/A**

9. If you entered a plea of guilty pursuant to a plea bargin,
   state the terms and conditions of the agreement. **N/A**

10. Kind of trial (Check one) **X** Jury ___ Judge Only

11. Did you testify at trial? ___ Yes **X** No

### DIRECT APPEAL

12. Did you appeal from the judgment of conviction? **X** Yes ___ No

13. If you did appeal, give the name and location of the court's
    decision (or attach a copy of the court's opinion or order):
    **See, attached.**

14. If you did not appeal, explain briefly why you did not appeal:
    **N/A**

    (a) Did you seek permission to file a late appeal? ___

    ___ Yes **X** No

### POST – CONVICTION PROCEEDINGS

15. Other than a direct appeal from the judgment of conviction
    and sentence, have you previously filed any petitions, ap-
    plications, or motions with respect to this judgment in any
    federal court? ___ Yes **X** No

16. If your answer to 15 was "Yes," give the following information:
    **N/A**

/////////////

///// – 2 PETITION FOR COMMON LAW WRIT OF HABEAS CORPUS

## CLAIMS

17. State concisely every claim that you are being held unlawfully
for. Summarize briefly the facts supporting each claim. If
necessary, you may attach extra pages stating additional claims
and supporting facts. You should raise in the application all
claims for relief which relate to the conviction under attack.

In order to proceed in federal court, you ordinarily must ex-
haust the administrative remedies available to you as to each
claim on which you request action by the federal court.

### CLAIMS ONE:
#### Ineffective assistance of counsel

1) Supporting Facts: (Without citing legal authorities
or argument state briefly the facts in support of this
claim):
**Counsel failed ab initio to raise or challenge any of
the issues presented herein.**

2) Did you seek administrative relief as to claim one?
___ Yes  __X__ No

**We have administrative grievance to redress the
challenges raised herein. Bureau of Prisons (BOP)
is compelled to abide by judgment order of the court.**

### CLAIM TWO:

#### Lack of Federal Legislative Jurisdiction over the
#### Locus in quo.

1) Supporting Facts: (Without citing legal authorities
or arguments state briefly the facts in support of
this claim):

**See, Attached Memorandum of Law with Incorporated
Points and Authorities.**

2) Did you seek administrative relief as to claim two?
___ Yes  _X_ No

If your answer is "Yes," describe the procedure
followed and the result.  If your answer is "No,"
explain why you did not seek administrative relief:

**We have administrative grievance to redress the**
**challenge raised herein.  Bureau of Prisons (BOP)**
**is compelled to abide by judgment order of the court.**

## CLAIM THREE:

**Lack of Federal Subject Matter jurisdiction over the**
**alleged prohibitive conduct - want of Coomerce Nexus.**

1) Supporting Facts: (Without citing legal authorities
or argument state briefly the facts in support of
this claim):

**See, Attached Memorandum of Law with Inorporated**
**Points and Authorities.**

2) Did you seek administrative relief as to claim three?
___ Yer  _X_ No

If your answer is "Yes," describe the procedure
followed and the result.  If your answer is "No,"
explain why you did not seek administrative relief.

**We have administrative grievance to redress the**
**challenges raised herein.  Bureau of Prisons (BOP)**
**is compelled to abide by judgment order of the court.**

## CLAIM FOUR:

**Mis-application of Federal Law, where such is unenacted**
**unpromulgated and unimplemented.**

1) Supporting Facts: (Without citing legal authorities
or argument state the facts in support of this claim)

**See, Attached Memorandum of Law with Incorporated**
**Points and Authorities.**

2) Did you seek adminstrative relief as to claim four?
___ Yes  _X_ No

If your answer is "Yes," describe the procedure followed and the result. If your answer is "No," explain why you did not seek administration relief.

**We have administrative grievance to redress the the challenges raised herein. Bureau of Prisons (BOP) is compelled to abide by judgment order of the court.**

18. Do you have any petition, application, motion or appeal now pending in any court either state or federal, regarding the conviction under attack? ____ Yes **X** No

   If "Yes," state the name of the court, case file number (if known), and th nature of the proceeding.

   **N/A**

19. State briefly why you believe that the remedy provided by 28 U.S.C. §2255 (Motion to Vacate Sentence) is inadequate or ineffective to test the legality of your detention.

   **Because the Legislative Territorial Court wherein the issues now complained of arose, lacks the Constitutional authority to entertain and to adjudicate the issues herein, thus a §2255 Motion is inadequate and inappropriate.**

**WHEREFORE**, applicant, Gustavo T. Luna, prays that the court GRANT him such relief to which he may be entitled in this proceeding.

Date: _____10/23_____, 2006.          Respectfully submitted by:

                                       _Gustavo L_____

                                       Gustavo T. Luna/applicant

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 06-1527

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Pablo S. Marquez, | * | |
| | * | |
| Defendant - Appellant. | * | |

Appeals from the United States
District Court for the
Western District of Missouri.

No. 06-1528

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Gustavo T. Luna, | * | |
| | * | |
| Defendant - Appellant. | * | |

Submitted: June 13, 2006
Filed: September 11, 2006

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,* District Judge.

---

LOKEN, Chief Judge.

After a three-day trial, the jury convicted Pablo Marquez and Gustavo Luna of possession with intent to distribute 1,866 kilograms of marijuana found by the Missouri State Highway Patrol hidden in a commercial trailer Marquez and Luna were driving from El Paso, Texas, to New Haven, Michigan, ostensibly to deliver a load of insulation material. Marquez and Luna appeal their convictions, arguing there was insufficient evidence that they knowingly possessed the well-hidden marijuana. Luna further argues that the district court[1] abused its discretion in admitting evidence of his prior drug conviction. We affirm.

## I. Sufficiency of the Evidence

Rick Talbert, an experienced Commercial Vehicle Officer of the Missouri State Highway Patrol, stopped a tractor-trailer rig driven by Marquez because it displayed the name of a trucking company, Classic Transportation, that Talbert did not recognize. The other driver, Luna, was asleep in the truck's berth. Marquez told Talbert they were delivering a load of insulation from El Paso, Texas, to New Haven, Michigan. Talbert noted inconsistencies in the information recorded in their driver log books and in the bill of lading they provided. Marquez's log book said that he should be in the sleeper berth, not Luna. It also said the load originated in El Paso on July 22, whereas the bill of lading, signed by "Mr. Reed," recited that the load originated in Tucson, Arizona, on July 20. Marquez said Reed had driven the load

---

*The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

[1] The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri.

-2-

from Tucson to El Paso. The bill of lading did not contain the carrier's phone number, which was unusual, and Marquez and Luna could not provide a phone number to contact their purported employer. Marquez told Talbert the load weighed 17,000 pounds; the bill of lading listed 28,500 pounds. Talbert also noted the trailer was sealed with a standard seal that can be purchased at any truck stop.

Lacking arrest authority and suspecting criminal activity, Talbert called for assistance. After Sergeant Jack McMullin arrived, Marquez consented to a search of the trailer, which he said was loaded and sealed before he took possession. When the officers broke the seal and opened the trailer door, they smelled marijuana but could not climb over the insulation to investigate. A drug dog was summoned and alerted on the trailer. The officers then took it to a warehouse where they found 1,866 kilograms of marijuana in 250 cellophane-wrapped bundles in a homemade sheetrock box that covered the front half of the trailer. This prosecution followed.

As Marquez and Luna were indisputably in possession of a distribution quantity of marijuana, the issue at trial was whether they knew the marijuana was hidden in the trailer, or were merely innocent couriers. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, giving the government the benefit of all reasonable inferences that may be drawn. We must uphold the conviction "unless no reasonable jury could find the defendants guilty." United States v. Mendoza-Larios, 416 F.3d 872, 873 (8th Cir. 2005).

Much of the government's evidence at trial focused on the bill of lading. The government proved that the listed shipper was a non-existent company in Tucson and that the listed consignee was a non-existent company at a non-existent address in New Haven, Michigan, near Detroit. No representative of the carrier signed the bill of lading. Mr. Reed signed for the shipper without providing a first name, which Officer Talbert had never encountered. Ronald Rodrigues, the owner of Classic Transportation, the carrier listed on the bill of lading, testified for the government that

-3-

it was not his trailer and that Marquez and Luna were not Classic drivers. Rodrigues noted that the bill of lading did not record that the load had traveled from Tucson to El Paso or who was responsible for the load after Reed relinquished it. Rodrigues explained that Classic's cargo insurer requires that bills of lading reflect when one driver surrenders possession to another. Thus, to Rodrigues, the bill of lading presented to Officer Talbert indicated either that the load never left Tucson, or that Reed was driving the load to its Michigan destination. On the other hand, a trucker who previously employed Marquez testified that he was a law-abiding driver and that drivers often do not sign the bill of lading when they pick up a load.

The government's trial evidence included the inconsistent statements in Marquez and Luna's log books and inaccuracies and inconsistencies in their statements to Officer Talbert when stopped. Marquez said he was driving for Classic Transportation and picked up the trailer at Classic's yard in El Paso, but Classic does not operate a yard in El Paso. The telephone numbers provided to Officer Talbert did not connect to any identifiable party. Officer Talbert also testified to a statement made by Marquez suggesting that he put the spare tire inside the trailer before it was sealed, which would have exposed Marquez to the palpable scent of marijuana. A DEA agent testified that the large quantity of marijuana had a street value of nearly $10 million in Detroit and opined that a drug dealer was not likely to entrust such a valuable load to two unwitting drivers.

Marquez testified in his own defense; Luna did not. Marquez testified that the tractor-trailer was owned by Jesus Barrera of El Paso, Texas (a fact confirmed by Missouri authorities). Marquez met Barrera two months earlier and made three prior cross-country trips without incident. Marquez testified that the shipment originated in Tucson and was driven to El Paso by a Mr. Reed, whom Marquez never met. Marquez picked up the sealed trailer at Barrera's yard in El Paso and picked up Luna, his second driver, thirty minutes later at a local truck stop. The two then drove from El Paso until stopped by Officer Talbert.

-4-

Marquez testified that the false entries in their log books were inadvertent. The false bill of lading was provided by Barrera and did not arouse Marquez's suspicion because the carrier's name, "Classic Transportation," was stamped on the side of the tractor. Marquez denied telling Officer Talbert he had *seen* the spare tire in the trailer; he simply assumed it was inside because the trailer had no spare tire rack. Rodrigues corroborated a portion of this defense when he testified that Barrera drove for Classic Transportation some months before this shipment, and that Rodrigues was then unable to locate Barrera to verify that he had stopped using Classic's name and signage. On the other hand, Marquez did not disclose that he was hired by Barrera when questioned about the trip by Officer Talbert.

In arguing the evidence was insufficient, Marquez and Luna rely on our decisions in Mendoza-Larios, 416 F.3d 872, and in United States v. Pace, 922 F.2d 451 (8th Cir. 1990). In Mendoza-Larios, two normal-acting motorists were convicted of possession with intent to distribute eight kilograms of cocaine carefully hidden in the airbag compartment of another person's car they were driving. We reversed the convictions, concluding that the government failed to prove knowing possession. In Pace, a divided panel reversed a possession-with-intent-to-distribute conviction because the government failed to prove that the defendant, who was hired to drive a car to Chicago for $250, knew about the cocaine concealed in his passenger's luggage. In responding that the evidence was sufficient to convict Marquez and Luna, the government relies on United States v. Sanchez, 252 F.3d 968 (8th Cir. 2001), where we upheld the conviction of a nervous truck driver who lied about his recent travels, apparently wrote the false bill of lading, was sitting next to materials used to construct the hidden drug compartment, and was implausibly hauling a half-empty truck of refrigerated produce across the country in November.

Weighing the sufficiency of the evidence is a fact-intensive task. Prior cases are instructive but are seldom if ever controlling. Here, while the government's evidence was not as compelling as in Sanchez, it was sufficient to convict. It is

-5-

significant, in our view, that Marquez and Luna were licensed commercial truck drivers purportedly engaged in interstate motor carrier transportation. In this heavily regulated industry, it is particularly suspicious for experienced truck drivers to be traveling under a false bill of lading while maintaining false log books and disclaiming any knowledge of what had been loaded into their trailer and by whom.[2] The innocent courier defense is inherently less plausible for commercial truck drivers transporting a bulky, $10 million load of marijuana than for the defendants in Mendoza-Larios and Pace, who transported lesser quantities of cocaine that were well hidden in other people's cars. When combined with the other evidence of inconsistent statements to Officer Talbert and Sergeant McMullin and Marquez's knowledge of the spare tire (which the jury was entitled to credit), as well as the defense's failure to produce corroborating testimony from the mysterious Barrera and Reed, we conclude that a reasonable jury could find Marquez and Luna guilty of knowing possession of a distribution quantity of marijuana. The district court did not err in denying their motions to acquit.

## II. Luna's Prior Conviction

Luna argues that the district court abused its discretion in admitting evidence of his eleven-year-old prior conviction for possession with intent to distribute marijuana. The district court admitted the conviction under Rule 404(b) of the Federal Rules of Evidence but gave a limiting instruction that the jurors may consider this evidence only to prove knowledge and intent, not whether Luna was guilty of the charged offense. We reverse a district court's admission of evidence under Rule 404(b) "only when such evidence clearly had no bearing on the case and was

---

[2] The bill of lading is a document of title that evidences the carrier's lawful possession of the goods and establishes its rights and duties respecting the goods. See U.C.C. §§ 1-201(15)-(16), 7-301 to -309. For the significance of accurate log books, see United States v. McCord, Inc., 143 F.3d 1095 (8th Cir. 1998).

introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005) (quotation omitted).

We have frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense. See, e.g., United States v. Foster, 344 F.3d 799, 801-02 (8th Cir. 2003), cert. denied, 541 U.S. 1031 (2004). Without citing Eighth Circuit precedent, Luna argues that his prior conviction was too remote in time. In this circuit, time is a relevant factor, but the remoteness standard is reasonableness, not an absolute number of years. Here, as in United States v. Love, 419 F.3d 825, 828 (8th Cir. 2005), it was well within the district court's discretion to rule that this "very similar" prior conviction was not overly remote, and that its probative value was not substantially outweighed by the danger of unfair prejudice.

The judgments of the district court are affirmed.

_____

TABLE OF CITATIONS

FROM THE MEMORANDUM OF LAW

3.

<u>ADAMS v UNITED STATES</u>, DK. No. 97-2263 (2nd Cir. 1998)

<u>UNITED STATES v MORGAN</u>, 346 U.S. 502, 505 (1954)

4.

<u>28 U.S.C. §88 District of Columbia-Courts</u>, Act of June 7, 1934, 48 Stat 926, and the Act June 25, 1936, 49 Stat. 1921

<u>O'DONOGHUE v UNITED STATES</u>, 289 U.S. 516 (1933), 77 L.Ed 1356, 53 S.Ct.74

<u>MOOKINI v U.S.</u>, 303 U.S.201 at 205(1938), 82 L.Ed 748, 58 S.Ct. 543

<u>FEDERAL TRADE COMMISSION v KLESNER</u>, 274 U.S. 145 (1927)

<u>CLAIBORNE-ANNAPOLIS FERRY CO. v UNITED STATES</u>, 285 U.S. 382 (1932)

6.

<u>HARTFORD v DAVIES</u>, 16 S.Ct. 1051 (1896)

<u>UNITED STATES v BEAVANS</u>, 16 U.S. (3 Wheat) 336 (1818)

<u>UNITED STATES v BENSON</u>, 495 F.2d 481 (1946)

<u>UNITED STATES v ROGERS</u>, 23 F.658 (DC Ark. 1885)

<u>FORT LEAVENWORTH RAILROAD v IOWA</u>, 114 U.S. 525 (1885)

<u>ADAMS v UNITED STATES</u>, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943)

7.

<u>UNITED STATES v JOHNSON</u>, 337 F.2d 180 (affmd) 86 S.Ct. 749, 383 U.S. 169, 15 L.Ed. 681

1-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth.-N

9.

UNITED STATES v BEAVENS, 16 U.S. Wheat 336 (1818)

3 Wheat At 350,351

3 Wheat At 386,387

3 Wheat At 388

11.

People v Godfrey,   7 Johns 225 N.Y. (1819)

17 Johns, at 233 (emphasis added)

12.

United States v Beavens, supra

United states v Cornell, 2 Manson 60, 1 cir. (1819)

2 Manson, at 63

13.

New Orleans v United States, 35 U.S. (10 pet)662 (1836)

10 Pet. at 737

14.

New York v Miln, 36 U.S.(11Pet.) 102 (1837)

36 U.S. at 133

36 U.S. at 139

15.

Pollar v Hagan, 44 U.S. (3 How.) 212 (1845)

44 U.S. at 221

44 U.S. at 228, 229

16.

Fort Leavenworth R. Co. v Iowa, 114 U.S. 525, (1885) 995

114 U.S. at 531

2 -Table of Cit. from the Memo Of Law w/Incorp. Points and Auth.-N

20.

United States v Fox, 95 U.S. 670, 672 (1877)

Manchester v Massachusetts, 139 U.S. 240, 262 (1890)

United States v Flores, 289 U.S. 137, 151 (1932)

U.S. v Bedford, 27 Fed. Cas. p.91, 103, Case No. 15,867 (1847)

22.

United States v Britton, 108 U.S. 199, 206 (1882)

United States v Eaton, 144 U.S. 677, 687 (1891)

United States v Gradwell, 243 U.S. 476, 485 (1916)

Donnelley v United States, 276 U.S. 505-511 (1927)

Jerome v United States, 318 U.S. 101, 104 (1942)

Norton v United States, 92 Fed. 2d 753 (1937)

United States v Grossman, 1 Fed. 2d 941, 950-51 (1924)

23.

State of Pennsylvania v The Wheeling E. Bridge Co. 13, How. (54 U.S.) 518, 563 (1851)

24.

The United States v Worrall, 2 Dall. (2. U.S.) 384, 391 (1798)

25.

T.M. Cooley, A Treatise on the Constitutional Limitation, 5th Ed., pp. 54, 55

Cohens v Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821)

20 Am Jur 2d §60, 377

Davis v Rogers, 1 Houst (del) 44

28.

Hagan v Lavine, 415 U.S. 528 (1974)

Ex Parte McCardle, 7, Wall 506 19 L.Ed. 264

e.q. Marbury v Madison, 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803)

Mitchell v Maurer, 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934)

3-Table of Cit. from the Memo. of Law w/ Incorp. Points and Auth-N.

<u>Judice v Vail</u>, 430 U.S. 327, 331, 332, 51 L.Ed. 2d 376, 97 S.Ct. 1211 (1977) (standing)

<u>Bender v Williams Port Areas School District</u>, 475 U.S. 534, 89 L. Ed. 2d 501, 106 S.Ct. 1326

<u>United States v Corrick</u>, 298 U.S. 435, 440, 80 L.Ed. 1263, 56 D. Vy. 829 (1936)

<u>e.q., Sumner v Matta</u>, 449 U.S. 539, 547-548 n.2, 66 L.Ed. 722, 101 S.Ct. 764 (1981)

<u>City of Kenosha v Bruno</u>, 412 U.S. 507, 511 37 L.Ed. 2d, 109, 93 S.Ct. 2222 (1973)

<u>Clark v Paul Gray, Inc.</u>, 306 U.S. 583, 588, 83 L.Ed. 1001 59 S.Ct. 744 (1939)

<u>St. Paul Mercury Indemnity Co. v Red Cab Co.</u>, 303 U.S. 283, 287-288 n.10 82 L.Ed. 845 58 S.Ct. 586 (1939)

<u>Marbury v Madison</u>, 5 U.S. 137, 176-178, 1 Cranch 137 (1803)

<u>Bell v Maryland</u>, 378 U.S. 266, 224 (1964)

<u>Stanard v Olesen</u>, 74 S.Ct. 768 (1954)

<u>McNutt v G.M.</u>, 56 S.Ct. 789, 80 L.Ed. 1135

<u>Thomas v Gaskiel</u>, 62 S.Ct. 673, 83 L.Ed. 111

<u>Housenbaum v Bauer</u>, 120 U.S. 450 (1887)

31.

<u>46 American Jurisprudence 2d Judgments §26</u>

<u>American Jurisprudence 2d Courts §115</u>

32.

<u>State of Rhode Island et, al v Commonwealth of Mass.</u>, 37 U.S. 657 (1938)

<u>Adams v United States</u>, 87 L.Ed. 1421

<u>American Jurisprudence 2d Courts §60 page</u>

4-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth-N

<u>Old Wayne Mut. Life Asso. v McDonough</u>, 204 U.S. 8, 51 L.Ed. 345, 27 S.Ct. 236

35.

<u>Stirone v United States</u>, 361 U.S. 212,80 S.Ct. 270, 4 L.Ed. 2d. 252 (1960) at 857

36.

<u>Brecht v Abrahamson</u>, 507 U.S. 123 L.Ed. 2d 353, 113 S.Ct. 1710 (1993)

<u>Engle v Isaac</u>, 456 U.S. 107, 128, 71 L.Ed. 2d 783,102 S.Ct. 1031, 162 ALR 1330 (1945)

<u>United States v Unmans</u>, 410 U.S. 396 411-412, 35 L.Ed. 2d 379, 93 S.Ct. 1007 (1973)

<u>United States v Bass</u>, 404 U.S. 336, 349 30 L.Ed. 2d 488, 92 S.Ct. 515 (1971)

37.

<u>United States v Knowles</u>, 29 F.3d 947, 952 (5th Cir. 1994)

38.

<u>Meyer v United States</u>, 175 F.2d 45, 47 (2nd Cir. 1949)

<u>Lewellyn v Nunez</u>, 573 F.2d. 769 (2d Cir. 1978)

<u>C.I.R. v Ridgeway's Estates</u>, 291 F.2d 257 (3rd Cir. 1961)

<u>United States v Cruikshank</u>, 92 U.S. 542, 558 23 L.Ed. 588, 593

<u>United States v Simmons</u>, 96 U.S. 360, 362, 24 L.Ed. 819,820

<u>United States v Carll</u>, 105 U.S. 611, 612, 26 L.Ed. 1135

<u>U.S. v Hess</u>, 124 U.S. 483, 487, 31 L.Ed. 516, 518, 8 S.Ct. 543

<u>Blitz v U.S.</u>, 153 U.S. 308, 315, 38 L.Ed. 725, 14 S.Ct. 924

<u>Keck v U.S.</u>, 172 U.S. 434, 437 43 LEd. 505, 507, 19 S.Ct. 254

<u>Morissette v U.S.</u>, 246, 270 note 30, 96 L.Ed. 288, 304 S.Ct. 240,cf.

<u>U.S. v Petrillio</u>, 332 U.S. 1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538

<u>Hamling v United States</u>, 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed. 2d 590 (1974)

5-Table of Cit. from the Memo. of Law w/Incorp. Point and Auth. "

U.S. v Pupo, 841 F.2d 1235 (4th Cir. 1988)

U.S. v Hooker, Supra. At 841 F.2d 1225 (4th Cir. 1988)

Orfield Criminal Procedure from Arrest to Appeal 243

Ex Parte Bain, 121 U.S. 1, 30 L.Ed. 849, 7 S.Ct. 781

United States v Norris, 821 U.S. 619, 74 L.Ed. 1076, 50 S.Ct. 424

Stirone v United States, 361 U.S. 212, 4 L.Ed. 2d. 252, 80 S.Ct. 270

Ex Parte Bain, surpra (121 U.S. at 10,13 )

Stirone v United States, supra (361 U.S. at 218)

42.

United States v Fox, 95 U.S. 670, 672 (1877)

Manchester v Massachusetts, 139 U.S. 240, 262 (1890)

United States v Flores, 289 U.S. 137, 151 (1932)

U.S. v Bedford, 27 Fed. Cas., p. 91, 103, Case No. 15,867 (1847)

44.

United States v Britton, 108 U.S. 199, 206 (1882)

United States v Eaton, 144 U.S. 677, 687 (1897)

United states v Gradwell, 243 U.S. 476, 485 (1916)

Donnelley v United States, 276 U.S. 505, 511 (1927)

Jerome v United States, 318 U.S. 101, 104 (1942)

Norton v United States, 92 Fed. 2d 753 (1937)

United States v Grossman, 1.Fed. 2d 941, 950-51 (1924)

45.

State of Pennsylvania v The Wheeling E. Bridge Co., 13 How. (54 U.S.) 518, 563 (1851)

The United States v Wortall, 2 Dall. (2. U.S.) 384, 391 (1798)

47.

T.M. Cooley, A Treatise on the Constitutional Limitations, 5th Ed., pp. 54, 55

6-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth.-N

Cohens v Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821)

49.

Five Flages Pig Line Co. v Dept. of Transportation, 854, F.2d 1438, 1440 (1988)

Stephan v United States, 319 U.S. 415, 426 (1943)

44 Stat Part 1, preface

Murrell v Western Union Tel. Co., 160 F.2d 787, 788 (1947)

United States v Mercur Corp., 83 F.2d 178, 180 (1936)

53.

Roger's Inc. v United States, 265 F.2d 615, 618 (1959)

55.

Slaughter-House Cases, 83 U.S. 36

United States v Dewitt, 76 U.S. 41

Gibbons v Ogden, 22 U.S. 1

Keller v United States, 213 U.S. 138

People v Godfrey, 17 Johns 225, at 233 (N.Y. 1818)

United States v Beavans, 16 (3 Wheat) 336 (1818)

Adams v United States, 319 U.S. 312 (1943)

Caha v United States, 152 U.S. 211, 215 (1894)

58.

Foley Brothers v Filardo, 336 U.S. 281 (1949)

62.

Hotch v United States, 212 F.2d 280 (9th Cir. 1954), at p.283

63.

Wei v Robinson, 246 F.2d 739 (7th Cir. 1957) cert. den. 78 S.Ct. 144, 355 U.S. 879

Wolfson v United States, 492 F.2d 1386, 204 Ct. Cl. 83 (1974)

Shafer v United States, 229 F.2d 124, cert. den. 76 S.Ct. 78, 351 U.S. 931

Northern States Power Co. v Rural Electrification Administration, 248 F. Supp. 616 (1965)

64.

United States v Mersky, 361 U.S. 431, 438 (1960)

65.

United States v Reinis, 794 F.2d 506 (9th Cir. 1986)

United States v Two Hundred Thousand Dollar, 590 F. Supp. 846 (S.D. Fla. 1984)

66.

United States v Welden, 377 U.S. 95 (1964)

Stephan v United States, 319 U.S. 423 (1943)

Best Foods v United States, 147 F. Supp. 749, 37 Cust. Ct. 1 (1956)

Peart v Motor Vessel Bering Explorer, 373 F. Supp. 927 (1974)

67.

United States v Nevers, 7 F.3d 59 (5th Cir. 1993)

United States v Larionoff, 431 U.S. 864, at 973, 97 S. Ct. 2150, at 2156, 53 L.Ed. 2d, 48 at 56

Manhattan Gen. Equip. Co. v C.I.R., 297 U.S. at 134

Neel v United States, 266 F. Supp. at 10

Western Union Teleg. Co. v F.C.C., 541 F.2d 346, 354 (3rd Cir. 1976), cert. den. 429 U.S. 1029 (1977)

Morning v Family Publications Services, Inc., 411 U.S. 356, 369 (1973)

United States v Mersky, supra.

69.

United States v Pupo, 841 F.2d 1235

United States v Young, 730 F.2d at 224

United States v McCray, 665 F.2d 664, 678, 679 (5th Cir. 1982)

United States v Stirone, 361 U.S. 212, 4 L.Ed. 2d 252, 80 S. Ct.

United States v Wuco, 535 F.2d 1225 (9th Cir. 1976). Cert. denied 429 U.S. 978, 97 S. Ct. 488, L.Ed. 2d 586 (1976)

Hale v United States, 89 F.2d (4th Cir.)

United States v Berlin, 472 F.2d 1002, 1007 (2d Cir. 1973)

United States v Beard, 414 F.2d 1014, 1017 (3rd Cir.)

United States v Lopez, at 2F.3d 1342

71.

Arizona v Manypenny, 451 U.S. 232, 101 S. Ct. 1657

United States v Fessler, 781 F.2d 384, 386 (1986)

People v Godfrey, 17 Johns 225 at 233

Gray v Blight, 112 F.2d 696

Gregory v Ascroft, 501 U.S. 452, 458, 115 L.Ed. 2d 410, 111 S. Ct. 2395 (1991)

72.

United States v Oregon, 366, U.S. 643, 649, 6 L.Ed. 2d 575, 81 S. Ct. 1278 (1961)

Case v Bowles, 327 U.S. 92, 102 90 L.Ed. 552, 66 S. Ct. 438 (1946)

Oklahoma ex rel Phillips v Guy F. Atkinson Co., 313 U.S. 508, 534, 85 L.Ed. 1487, 61 S. Ct. 1050 (1941)

73.

United States v Darby, 312 U.S. 100, 124, 85 L.Ed. 609, 61 S. Ct. 451, 132 ARL 1430 (1941)

United States v Mechanik, 475 U.S. 66, 70, 106 S. Ct. 938, 941, 89 L.Ed. 2d 50 (1989)

United States v Hooker, 841 F.2d 1225

<u>Arizona v Rumsey</u>, 467 U.S. 203, 212, 81 L.Ed. 2d 164, 104 S. Ct. 2305 (1984)

<u>Oregon v Kennedy</u>, 456 U.S. 667, 691, 692 n. 34, 72 L.Ed. 2d 416, 102 S. Ct. 2083 (1982)

<u>United States v Lopez</u>, No. 93-1260

<u>McCullough v Maryland</u>, Wheat 316 (1819)

<u>Gibbons v Ogden</u>, Supra at 195

<u>Marbury v Madison</u>, 1 Cranch 137, 177 (1803)

74.

<u>18 U.S.C. §3551</u>

Parallel Tables of Authorities and Rules 1997 Ed. at pg. 733

43 C.F.R. 9260-public lands, Alaska

36 C.F.R. 242-subsistence management regulations for public lands in Alaska

50 C.F.R. 100, (same as C.F.R. 242)

78.

42 C.J.S. 'Indictments and Information' §1, p.833

22 Corpus Juris Secundum, "Criminal Law", §324, p.390

80.

<u>Hooker v Boles</u>, 346 F.2d 285, 286 (1965)

81.

22 Corpus Juris Secundum, "Criminal Law", §150 p.183

<u>Voorhees v The Bank of the United States</u>, 35 U.S. 449, 474-75 (1836)

84.

Federal Register (44 U.S.C. §1505)

Gustavo T. Luna/09054-051
Oakdale-FCI
P.O. Box 5000
Oakdale, La. 71463


## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA


| | |
|---|---|
| GUSTAVO T. LUNA, ) | CASE No. 6:05CR03107-RED |
| ) | |
| Petitioner, ) | RE: Case No. _____ |
| ) | |
| vs. ) | **CAUSE** |
| ) | |
| ALBERTO GONZALES, ESQ., ) | MEMORANDUM OF LAW |
| ATTORNEY GENERAL FOR THE ) | WITH INCORPORATED |
| "UNITED STATES", ) | POINTS AND AUTHORITIES |
| and ) | |
| ) | IN SUPPORT OF COMMON |
| HARLEY G. LIPPIN, Dir., ) | LAW WRIT OF HABEAS CORPUS |
| FEDERAL BUREAU OF PRISONS, ) | 28 USC §2241 |
| ) | |
| Respondents. ) | |


**BEFORE THIS HONORABLE COURT:**

06 2085

**COMES NOW,** Gustavo T. Luna, in want of counsel, accused in
the above referenced cause, and as for the instant Petitioner for
the Common Law Writ of Habeas Corpus, shows this Honorable Court
as follows:

# FILED

1.

DEC - 7 2006

That relief sought herein, is provided for under the Common

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Law, the Constitution of the United States of America, as amended
AD 1791, Article I §9 Cl 2, and in the nature of 28 U.S.C. §2241.

///// - 1  Memorandum of Law with Incorporated Points and Authorities-N

2.

That this Honorable Court has personal jurisdiction over the respondents named in the  caption area, supra, in the nature of D.C. Code §13-422, and 28 U.S.C. §1331, 1332, and 28 U.S.C. §2241. where both respondents have their principle place of business within the District of Columbia.

3.

That in tha nature of **Adams v. United States**, DK. No. 97-2263 ( 2nd Cir. 1998), the Court is compelled to entertain the instant pleading as submitted and to not attempt to construe or concert the pleading into any other statutory provision.  See, **United States v. Morgan**,  346 U.S. 502, 505 (1954).

4.

That the Petitioner sets forth the following with incorporated points and authorities:

(a)  The jurisdiction of Federal courts is defined in the Constitution  at Article III for judicial courts, in Article I for legislative courts, and in Article IV for territorial courts. Some courts created by Acts of Congress have been referred to as "Constitutional Courts", whereas others are regarded as "Legis-lative Tribunals" **28 U.S.C. §88 District of Columbia-Court**s Act of June 7, 1934, 48 Stat. 926, and Act June 25, 1936, 49 Stat. 1921, provide that the Court of Appeals of the District of Columbia, the Supreme Court, and District Court of the United States for the District of Columbia, are shown to be Constitutional courts created under Article III of the Constitution.  See, **O'Donoghue v. United States**, 289 U.S. 516 (1933), 77 L.Ed 1356, 53 S.Ct. 74, **Mookini**

///// - 2  Memo. of Law with Incorporated Points and Author -N

v. United States, 303 U.S. 201 at 205 (1938), 82 L.Ed 748, 58 S.Ct.
543.   The Federal Trade Commision v. Klesner, 274 U.S. 145 (1927)
and   Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382
(1932).

(b)   That, defense counsel failed ab initio to raise or
challenge any of the issues presented herein.

(c)   That the Petitioner is in custody for an act not done
or committed in pursuance of an act of Congress or an order, pro-
cess, judgment, or decree of a court or judge of the United States.
And he is in custody in violation of the Constitution and the laws
or treaties of the United States (28 U.S.C. §2241(c)(2)(3)).

(d)   That the federal statutory provisions under which the
Petitioner is charged, have not been promulgated in either the
Federal Register or the Code of Federal Regulations, thus the leg-
itimate application of such statutory provisions are restricted to
application over federal government only.

(e)   That the government has failed ab initio to establish
federal subject matter jurisdiction, where it has failed to charge
the sine qua non, an alleged violation of the Federal Interstate
Commerce statute, as a prerequisite to the subsequent charged of-
fense.

5.

That, the Petitioner now shows this Honorable Court that the
Federal government lacked legislative, territorial, or admiralty
jurisdiction over the locus in quo, and also lacked the Constitu-
tional or Congressional authority to reach prohibitive acts alleged

to be criminal in nature, which were committed well within the borders of the sovereign state.

## INEFFECTIVE ASSISTANCE OF COUNSEL

That, defense counsel failed ab initio to raise or challenge the governments lack of **Federal Legislative, Territorial or Admiralty Jurisdiction** over the locus in quo. The Petitioner argues that there is no presumption in favor of jurisdiction, where the basis for jurisdiction must be affirmatively shown on the face of the record. See **Hartford v. Davies, 16 S.Ct. 1051 (1896).** The exclusive legislative jurisdiction of the federal government is not addressed in principle to subject matter, but to geographical location. See, **United States v. Beavens, 16 U.S. (3 Wheat) 336 (1818).** It is axiomatic that the prosecution must always prove (legislative, territorial or admiralty) jurisdiction over the geographical location whereon the alleged prohibitive acts were purported to have been committed, otherwise a conviction could not be sustained. See, **United States v. Benson, 495 F.2d 481 (1946).** Federal criminal jurisdiction is never presumed, and must always be proven, and can never be waived. See, **United States v. Rogers, 23 F. 658 (DC Ark. 1885).** In a criminal prosecution where the federal government is a moving party it must not only establish ownership of the property upon which the crimes allegedly occurred but they must also produce documentation that the state has ceded the jurisdiction to that property to them (view of the Supreme Court) in **Fort Leavenworth Railroad v. Iowa, 114 U.S. 525 (1885).** No jurisdiction exists in the United States to enforce federal criminal laws until consent to accept jurisdiction over acquired lands have been published and filed on  behalf of the United States as provided

and filed in 40 U.S.C. §255, and the fact that the state authorized
the federal government to take and exercise jurisdiction was immat-
erial.  See, **Adams v. United States**, 319 U.S. 312, 63 S.Ct. 1122,
87 L.Ed. 1421 (1943).

7.

The distinction that jurisdiction is more than a technical con-
cept and is a Constitutional requirement.  See, **United States v.
Johnson**, 337 F.2d 180 (affmd) 86 S.Ct. 749, 383 U.S. 169, 15 L.ED.
681 Cert den. 87 S.Ct. 44, 134 **and at 385 U.S. 846, 17 L.Ed.2d**
117.  In the United States, there are two separate and distinct kinds
of jurisdiction:  The jurisdiction of the states within their own
territorial boundaries, and then Federal jurisdiction.  Broadly
speaking, the state jurisdiction encompasses the legislative power
to regulate control and govern real and personal property, individ-
uals, and enterprises within the territorial boundaries of any given
state.  In contrast, Federal  jurisdiction is extremely limited:
In July of 1776, after declaring their independence, the new States
possessed all their sovereignty, power, and jurisdiction over all
soil and people in their respective territorial limits.  This con-
dition of supreme sovereignty of each state over all property and
persons within the borders thereof continued notwithstanding the
adoption of the Articles of Confederation.  In Article II, it is
expressly stated:

> " Each state retains its sovereignty freedom and independ-
> ence, and every power, of jurisdiction and right which is
> not by this Confederation, expressly delegated to the United
> States, In Congress assemble."

Memo. of Law with Incorporated Points and Auth. - N

8.

As the history of the Confederation Government has shown each
State was indeed sovereign and independent to the degree that it
made the Central Government created by the confederation fairly
ineffectual. These defects of the Confederation government strained
the relation between and among the states and the remedy became call-
ing a Constitutional Convention. The representatives which assembled
at Philadelphia in May of 1787 to attend the Constitutional Conven-
tion met for the primary purpose of improving the commercial relations
among the states, although the product of the convention produced
more than this. But no intention was demonstrated for the states
to surrender in any degree, the jurisdiction so possessed by the states
at the time, and indeed the Constitution as finally drafted continued
the same territorial jurisdiction of the states as existed in the
Articles of Confederation. The essence of this retention of each state's
jurisdiction is embodied in the Constitution at Article I Section 8
Clause 17 of the  Constitution of the United States of America, which reads
as follows:

> " To exercise exclusive legislation in all cases whatsoever
> over such districts (not exceeding Ten Miles Square) as may
> be cession of particular states, and acceptance of Congress
> becomes the seat of the government of the United States,
> and to exercise like authority over all places purchased by
> the consent of the Legislature of the states in which the
> same shall be for the erection of forts, Magazines, arsenals,
> dock-yards and other needful buildings."

9.

The reason for the inclusion of this clause in the Constitution
was and is obvious. Under the Article of Confederation, the states retain

full and complete jurisdiction over lands and persons within their
borders. Since the time of the ratification and implementation of
the present Constitution of the United States, the United States
Supreme Court and all lower courts have had many opportunities to
construe and apply these provisions of the Constitution. The es-
sence of all these decisions is that the states of this Nation have
exclusive jurisdiction of property and persons located within their
borders, excluding such land and persons residing thereon which have
been ceded to the United States. Perhaps one of the earliest dec-
isions on this point was in the **United States v. Beavens**, 16 U.S.
**Wheat 336 (1818)**. This case involved a federal prosecution for murd-
er committed onboard the warship, Independence anchored in the harbor
of Boston, Massachusetts. The defense argued that only the state
had jurisdiction to prosecute and argued that the federal circuit
courts had no jurisdiction of this crime supposedly committed within
the Federal Admiralty jurisdiction. In the argument before the
Supreme Court, counsel for the United States admitted as follows:

> " The exclusive jurisdiction which the United States have in forts,
> dock-yards ceded to them is derived from express assent of the states
> by whom the cessions are made. It could be derived in no other manner;
> because without it, the authority of the states would be supreme and
> exclusive therein." **3 Wheat at 350, 351**

10.

In holding that the state of Massachusetts had no jurisdiction
over the crime the court held:

> " What then is the extent of jurisdiction which a states possesses?"
>
> " We answer, without hesitation the jurisdiction of a state is co-
> extensive with it's territory, co-extensive with it's legislative power."
> **3 Wheat at 386, 387**

" It is observable that the power of exclusive legislation (which
is jurisdiction) is united with cession of territory, which is to
be the free act of the states. It is difficult to compare the two
sections together, without feeling a conviction not to be strenght-
ened by any commentary on them, that in describing the judicial power,
the framers of our constitution had not in view any cession of territ-
ory or, which is essentially the same of general jurisdiction." 3

**Wheat at 388**

11.

Thus in **Beavens**, the court established a principle that Federal
jurisdiction extends only over the areas wherein it possesses the
power of exclusive legislation, and this is a principle incorpor-
ated into all subsequent decisions regarding the extent of Federal
Jurisdiction. To hold otherwise would destroy the purpose, intent
and meanings of the entire Constitution of the United States. One
year later the Supreme Court of New York was presented with the
same issue, of whether the state of New York had jurisdiction over
a murder committed at Fort Niagara, a Federal fort. In **People v.
Godfrey, 17 Johns 225 N.Y. (1819)**, that court held that the fort
was subject to the jursdiction of the state since the lands therefore
had not been ceded to the United States, the rationale of it's opin-
ion stated:

> " To oust this state of its jurisdiction to support and maintain its
> laws and to punish crimes, it must be shown that an offense committed
> within the acknowledged limits of the state, is clearly and exclusively
> cognizable by the laws and courts of the United States. In the case
> already cited Chief Justice Marshall observed that to bring the offense
> within the jurisdiction of the courts of the union, it must have been
> committed out of the jurisdiction of any state." It is not (he says)
> the offense committed but the place in which it is committed, which
> must be out of the jurisdiction of the state. **17 Johns, at 233**
> (emphasis added)

12.

The case relied upon by this court was the **United States v. Beavens, supra.** At about the same time that the New York Supreme Court rendered it's opinion in **Godfrey**, a similar situation was before a Federal Court, the only difference being that murder was committed in and occurred on lands which had been ceded to the United States. In the **United States v. Cornell**, 2 Manson 60, 1cir. (1819), the Court held that the case fell within Federal jurisdiction, describing such jurisdiction as follows:

> " But although the United States may well purchase and hold lands for public purposes   within the territorial limits of a state, this does not of itself oust the jurisdiction or sovereignty of such state over lands purchases.  It remains until the state has relinquished its authority over the lands either expressly or by necessary implication. When therefore a purchase of land for any of these purposes is made by the National Government and the state legislature has given its consent to the purchase, the lands so purchased by the very terms of the Constitution ipso facto falls within the exclusive legislation of Congress and the state jurisdiction is completely ousted." **2 Manson at 63**

13.

Almost 18 years later U.S. Supreme Court again was presented a case involving the distinction between state and federal jurisdiction. In **New Orleans v. United States**, 35 U.S. (10 pet) 662 (1836).  The United States claimed title to property in New Orleans likewise claimed by the city.  After holding that, title to the subject lands was owned by the city, the court addressed the question of federal jurisdiction and states:

" Special provisions is made in the Constitution for the cession of
Jurisdcition from the state over places where the Federal Government
shall establish forts, or other military works. And it is only in
these places or in the territories of the United States where it can
exercise a general jurisdiction." **10 Pet. at 737**

14.

In **New York v. Miln,**, 36 U.S. (11Pet.) 102 (1837), the question
before the court involved the attempt by the city of New York to
assess penalties agaisnt the master of a ship for failure to make a
report as to the persons his ship brought to New York. As against
the master's contention that the act was unconstitutional and that
New York had no jurisdiction in the matter, the court held:

> " If we look at the places of its operation, we find it to be within
> the territory, and therefore, within the jurisdiction of New York. If
> we look at the person on whom it operates he is found within the same
> territorial jurisdiction." **36 U.S. at 135**

> " They are these: That a state has the same undeniable and unlimited
> jurisdiction over all persons and things within its territorial limits,
> as any foreign nation, where that jurisdiction is not surrendered or
> restrained by the Constitution of the United States. That by virtue
> of this it is not only the right, but the burden and solemn duty of a
> state, to advance the safety, happiness and prosperity of its people
> and to provide for its general welfare by any and every act of legis-
> lation which it may deem to be conductive to these ends; where the
> power over the particular subject, or the manner just stated. That all
> those powers which relate to merely municipal legislation, or what may
> perhaps more properly be called internal police are not thus surrendered
> or restrained and that consequently in relation to these the authority
> of a state is completely unqualified and exclusive." **36 U.S. at 139**

15.

Some eight years later, in **Pollar v. Hagan**, 44 U.S. (3 How.)
212 (1845), the question of Federal Jurisdcition was once again be-

fore the court.  This case involved a contest of the title of real
property, with one of the parties claiming a right to the disputed
property via U.S. patent; the lands in question were situated in Moble,
Alabama adjacent to Moble Bay, the court held:

> " We think a proper examination of this subject will show that the
> United States never held and Municipal sovereignty, jurisdiction or
> right of soil in and to territroy of which Alabama or any of the new
> states were formed."  **44 U.S. at 221**

> " Because the United States have no Constitutional capacity to exercise
> Municipal Jurisdiction, Sovereignty or eminent domain within the limits
> of a state or elswhere, except in case which it is expressly granted."
> **44 U.S. at 228, 229**

> " Alabama is therefore entitled to the sovereignty and Jurisdiction over
> all the territory within her limits, subject to the common law."  **44 U.S.**
> **at 228, 229**

### 16.

The single most important case regarding the subject of federal
jurisdiction appears to be **Fort Leavenworth R. Co. v. Iowa, 114 U.S.**
525 (1885) 995, which set forth the law on this point of federal
jurisdiction, fully.  There the railroad company's property, which
passess through, Fort Leavenworth federal enclave was being subject
to taxation by Kansaa, and the company claimed an exemption from the
state taxation.  In holding that the company is properly taxed, the
court carefully explained federal jurisdiction within the states:

> "  The consent of the state to the purchase of lands within them for
> the special purpose named is however, essential, under the Constitution
> to the tansfer of the jurisdiction and dominion.  Where lands are acq-
> uired without such consent, the possession of the United States, political
> jurisdiction be ceded to them in some other way is simply that of an
> ordinary proprietor.  The property in that case, unless used as a means

to carry out the purposes of the government, is subject to the leg-
islative authority and control of the states equally with the property
of private individuals." **114 U.S. at 531**

## 17.

The Constitution for the United States created a government,
which has jurisdiction over certain enumerated subject matter.  It
is only in these areas that Congress can enact laws, and when they
do, the Federal Courts are to enforce the law.  **But** when laws do not
come from a enumerated power, the Federal Courts are to prevent the
U.S.  Government or Congress from applying them.

## 18.

The Federal Constitution prescribes what the "jurisdiction" of
the Federal Government is by the enumerated powers.  That government
can regulate foreign and interstate commerce, fix the standards of
weights and measurements, establish uniform laws on bankruptcies,
coin money and provide for the punishment of counterfeiting of coins
and securities of the United States, protect the arts and sciences
by copyrights and patents, punish for piracies and felonies commit-
ted on the high seas, raise and support an army and navy, and lay
and collect taxes by appointment, and indirect taxes by exercise,
duties, or imports.

## 19.

This is about the extent of the legitimate jursdiction of the
Federal United States Government.  It is only in these areas, supra,
that a "crime (or offense) against the Federal United States" can
exist, and this is so only when Congress actually passes a Law in
one of these areas:

But an act committed within a State for good or a bad purpose, or whether with honest or a criminal intent, cannot be made an offense against the United States, unless it has some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States of America.

20.

**United States v. Fox**, 95 U.S. 670, 672 (1877).  [T]he courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatsoever.  The criminal jurisdiction of the Courts of the United States is wholly derived from the Statutes of the United States.  **Manchester v. Massachusetts**, 139 U.S. 240, 262 (1890); **United States v. Flores**, 289 U.S. 137, 151 (1932).  Acts of Congress, as well as the Constitution, must generally unite to give jurisdiction to a particular court.  **United States v. Bedford**, 27 Fed. Cas., p.91 103, Case No. 15,867 (1847).

21.

The Federal Courts only have jurisdiction in matters involving an "offense against the United States," and nothing can be an offence against the United States unless it is made so by Congressional Act pursuant to the U.S. Constitution.  There is no other source from which Congress can get authority to make law, including the **Common Law**.  Thus it has been said that, "There is no Federal Common Law."

22.

But the better way of stating this is to say, "There are no Common Law Offenses (or crimes) against the United States."  **United States v. Britton**, 108 U.S. 199, 206 (1882);  **United States v. Eaton**, 144 U.S. 677, 687 (1891); **United States v. Gradwell**, 243 U.S. 476, 485 (1916);  **Donnelley v. United States**, 276 U.S. 505-511 (1927);

Jerome v. United States, 318 U.S. 101, 104 (1942); Norton v. United States, 92 Fed.2d 753 (1937). In other words, the Common Law is not a source for criminal jurisdiction as it is in the States. United States v. Grossman, 1 Fed.ed 941, 950-51 (1924).

23.

By "jurisdiction" is meant the authority of the Federal Courts to hear and decide a matter. Thus it is even more correct to say that, "The Federal Courts have no jurisdiction of Common Law offenses, and there is no jurisdiction of Common Law offenses, and there is no abstract pervading principal of the Common Law of the Union under which we (Federal Courts) can take jurisdiction. **State of Pennsylvania v. Wheeling E. Bridge Co., 13 How. (54 U.S.) 518, 563 (1851).**

24.

If Congress tries to make a Common Law Offense a crime (such as libel, drugs, theft, burblary, murder. kidnapping, arson, rape, abortion, assault, fraud, etc.), which have no relation to an enumerated power, it would simply be an "unconstitutional" act. Congress can declare nothing to be a crime except where it is based upon a delegated power. Thus the only thing that can be a crime against the "United States" is that which comes from the U.S. Constitution. These concepts were stated early on by the U.S. Supreme Court:

> In relation to crimes and punishments, the objects of the delegated power of the United States are enumerated and fixed. Congress may provide for the punishment of counterfeiting the securities and current coin of the United States, and may define and punish piracies and felonies committed on the high seas, and offenses against the

Art. §8 ***, but there is no reference to a Common Law authority.
Every power is [a] matter of definite and positive grant; and the
very power that are granted cannot take effect until they are exercised
through the medium of law. The United States v. Worrall, 2 Dall. (2.
U.S.) 384, 391 (1798).

25.

A Constitution is not to be  made to mean one thing at one time,
and another at some subsequent time when the circumstances have so
changed, as perhaps to make a different rule in the case desirable.
A principal share of the benefit expected from written Constitution
would be lost if the rules they establish were so flexible as to bend
to circumstances or be modified by public opinion.  [A] court or
legislature which should allow a change in public sentiment to influ-
ence it in giving to written constitution a construction not warranted
by the intention of its founders, would be justly chargeable with
reckless disregard of Officail Oath (28 U.S.C. §453-18 U.S.C. §1621)
and public duty; and if its course could become a precedent these
instruments would be of little avail.  What court is to do, therefore,
is to declare the law as written.  **T.M. Cooley, A Treatise on the
Constitutional Limitation,** 5th Ed., pp. 54,55., rather than be swayed
by polictical ambition and the unlawful unsurpation of police powers.
Chief Justice, John Marshall stated:

> " We [Judges] have no more right to decline the exercise of jurisdiction,
> which is given, than to usurp that which is not given. The one or the
> other would be treason to the Constitution." **Cohens v. Virginia,** 6
> **Wheat. (19 U.S.) 264, 404 (1821).**

26.

The district court erred in not determining jurisdiction prior
to entertaining the cause.

///// - 15   Memo. of Law with Incorporated Points and Auth  - N

a.  Standard of Review

The court's duty to resolve the jurisdiction of the court, regardless of who brings the action, the court must make a legal finding as to its authority to take venue and jurisdiction, before the court moves to entertain the cause before it.  See, **20 Am Jur 2d §60, 377**

### §60    Power and Duty to Determine Jurisdiction

A Court has the power and duty to examine and determine whether or not it has jurisdiction over the subject matter presented to it, and its determination being subject, of course, to appellate review.  This question should be considered by the court before it looks at other matters involved in the case, such as whether the parties are properly before the court. It may, and must do this on its own motion, without waiting for the question of its jurisdiction to be raised by any of the parties involved in the proceedings.

### §62    Jurisdiction as dependent on application for relief

The general rule is that the court cannot adjudicate a controversy on its own motion; it can do so only when the controversy is presented to it by a party, and only if the case is presented to it in the form of a proper pleading.  A court has no power either to investigate or to initiate proceedings.  When a statute prescibes a mode of acquiring jurisdiction, that mode must be followed or the proceedings and resulting judgment will be void and the judgment subject to collateral attack.

### §65    Effect of Lack of Jurisdiction

" THE GENERAL RULE IS THAT PROCEEDING CONDUCTED OR DECISIONS MADE -- BY A COURT ARE LEGALLY VOID WHEN THERE IS AN ABSENCE OF JURISDICTION OVER THE SUBJECT MATTER.

A COURT DEVOID OF JURISDICTION OVER THE CASE CANNOT MAKE

A DECISION IN FAVOR OR EITHER PARTY, CANNOT DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM AND CANNOT RENDER A SUMMARY JUDGMENT,
AS A DECISION WOULD BE ON THE MERITS OF THE ACTION. **IT CAN ONLY
DISMISS THE CASE FOR WANT OF JURISDICTION.** HOWEVER, A COURT CAN SET
ASIDE ORDERS IT MADE BEFORE THE WANT OF JURISDICTION WAS DISCOVERED,
AND A JUDGMENT BY A COURT WITHOUT JURISDICTION OVER SUBJECT MATTER
CAN BE SET ASIDE AND VACATED AT ANY TIME BY THE COURT THAT RENDERED
IT." (In Part)

## 27.

The Petitioner asserts that the District Court lost its juris-
diction, once it failed to determine jurisdiction to hear this case
at bar before proceeding with sentencing and/or trial.

## 28.

The question of challeging the court, and the United States
jurisdiction, was never waived by this Petitioner, it is well settled
in the law that when jurisdiction of the court and of the United States
is challenged, thus **"Onus Probandi is the actor."** Onus Probandi
burden of providing the burden of proof, "The strict meaning of the
Onus Probandi," is that, if no evidence is adduced by the party on
whom the burden is cast, the issue must be found against him, **Davis v.
Rogers, 1 Houst (del.) 44.** "Where jurisdiction is challenged it
must be proved," **Hagen v. Lavine, 415 U.S. 528 (1974).** Because it
is not sufficient that jurisdiction of the United States Courts may
be inferred argumentatively from averments in the pleadings it fol-
lows that the necessary factual predicate may not be gleaned from the
briefs and arguments themselves; this principal of federal jurisdiction
applies whether that case is at the trial stage or at the appellate
stage.

///// - 17  Memo. of Law with Incorporated Points and Auth...

29.

The Petitoner asserts that the court and government has not been granted jurisdiction through the Constitution of the United States of America, to adjudicate matters beyond the legislative jurisdiction of the United States. The courts and the government have failed to offer proof, or make findings and conclusions of law, as to the jurisdiction in the above alleged criminal action. "A court cannot proceed at all in any case without jurisdiction but must announce the fact and dismiss the cause." See, **Ex Parte McCardle**, 7 Wall 506, 19 L.Ed. 264. Before considering each of the standings theories, it is appropriate to restate certain basic principals that limit the power of every Federal Court. Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto. **e.q. Marbury v. Madison**, 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803). For that reason, every Federal Appellate Court has a special obligation to "satisfy itself not only of its jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. **Mitchell v. Maurer**, 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934) See, **Judice v. Vail**, 430 U.S. 327 331, 332 51 L.Ed.2d. 376, 97 S.Ct. 1211 (1977)(standing), "and if the record discloses that the lower courts was without jurisdiction (such as in this case) this court will notice the defect, although the parties make no contention concerning it." See, **Bender v. Williams Port Areas School District**, 475 U.S. 534, L.Ed.2. 501, 106 S.Ct. 1326. When the lower Federal Court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining

the suit. See, United States v. Corrick,298 U.S. 435, 440, 80 L.Ed.
1263, 56 D.Vy. 829 (1936). See also e.q., United States v. Mata,
449 U.S. 539, 547-548 n.2, 66 L.Ed. 722, 101 S.Ct. 764 (1981), City
of Kenosha v. Bruno, 412 U.S. 507, 511 37 L.Ed.2d, 109, 93 S.Ct. 222
(1973), Clark v. Paul Gray, Inc., 306 U.S. 583, 588, 83 L.Ed. 1001
59 S.Ct. 744 (1939), St. Paul Mercury Indemnity Co. v. Red Cab Co,
303 U.S. 283, 287-288 n.10 82 L.Ed. 845 58 S.Ct. 586 (1936). This
obligation to notice defects in a court of appeals, subject matter
jurisdiction, assume a special importance, when a constitutional que-
stion is presented. In such cases we have held strictly to the stand-
ing requirements to ensure that out deliberations will have benefit
of adversary presentation and full development of the relevant facts.
The court must be mindful that the powers of the legislature are de-
fined and limited and that those limits may not be mistaken of forgotton,
the Constitution of the United States of America has been written
indeed this is the very essence of the judicial duty. See, Marbury
v. Madison, 5 U.S. 137, 176-178, 1 Cranch 137 (1803).d See, also,
Bell v. Maryland, 378 U.S. 266, 224 (1964)(Douglas J. Concurring).
" A district court are courts limited jurisdiction, which has only
powers conferred on it by this Title under 28 U.S.C.A. Article III,
and cannot assume jurisdiction." See, Stanard v. Olesen, 74 S.Ct768
(1954) also, McNutt v. G.M., 56 S.Ct. 789, 80 L.Ed. 1135., and Thom-
son v. Gaskiel, 62 S.Ct. 573, 83 L.Ed. 111. It is clear that federal
jurisdiction does not rest in federal statutes that do not invest
exclusive jurisdiction. Neither statute governing courts authority
not the statute governing the charged crime invest exclusive auth-
ority of the subject matter to justify the abrupt (police power)
removal of this Petitioner from the State jurisdiction, by the Federal

Government.  The Supreme Court in Housenbaum v. Bauer, 120 U.S. 450
(1887), searching the language of the statute to see if jurisdiction
is conferred by a statute stated:

> " Here we are bound by statute and not by States alone, but by an
> act of Congress, which obliges us to follow the State statute and
> State practice.  The Federal courts are bound hand and foot, and
> are compelled and, obliged by the federal legialature to obey the
> State law."

### 30.

The Petitioner contends that such rules prevail where it appears
from the record that the court was without jurisdiction, of either
person or the subject matter.  For the record, where it appears from
the record that the court did not have jurisdiction of the person or
the subject matter, there is not conclusive presumption to preclude
an injury into the fact and to prevent a declaration of the invalid-
ity of the judgment.  A record, which affirmatively shows want of
jurisdiction, is of its self, **conclusive as that fact**.

### 31.

Moreover, a district court judge may and must check for the courts
jurisdiction to proceed, in the pleading proceeding.  He must do
this on his own motion without waiting for the question of lawful
jurisdiction to be raised by any of the parties involved in the
proceedings.  He is charged to know that the court proceedings con-
ducted absent jurisdiction over the subject matter are legally void
and subject to collateral attack.  See, **46 American Jurisprudence
2d.  Judgment §26.**  As a district court judge charged with knowledge
that jurisdiction is the authority to hear and determine a specific
case within a class over which the court has subject matter juris-

diction. Also awareness that his court is subject to **Territorial**
**limitation and cannot extend** the jurisdiction authority which comes
pursuant to an act of Congress and under which behalf the court func-
tions. Knowing that the jurisdiction of his court is limited, and
can be further limited by constitutional or statutory provisions to
only part of the territory of the sovereignty to which the court be-
longs. See, **American Jurisprudence 2d. Courts §115.**

32.

The district court of Petitioner's conviction is one limited and
special original jurisdiction, its action must be confined to the
particular cases, controversies, and parties over which the consti-
tution and the laws have authorized it to act; any proceedings
without the limits prescribed is Coran Non Judice and its actions a
nullity. See, **State of Rhode Island et. al. v. Commonwealth of Mass.**
**37 U.S. 657 (1938).** The statute designating the Federal Government
charges, that if a crime does not authorize concurrent jurisdiciton
doctrine authorize concurrent jurisdiction. See, **Adams v. United**
**States, 87 L.Ed. 1421.** The jurisdiction to detemine jurisdiction
doctrine authorizes courts to issue ancillary orders while deter-
mining thier own jurisdiction, and to punish as criminal contempt,
the violations of such others, even though it may later be determined
that the court lacks jurisdiction over the proceedings. When a
court assumes jurisdiction but later discovers that it has no subject
matter jurisdiction, the court must take the appropriate action, al-
though it acted in accordance with its previous belief that it had
jurisdiction. See, **American Jurisprudence 2d. Courts §60 page 377**
Jurisdiction to render a judgment in a particular case or against
particular persons may not be presumed where the record itself shows

jurisdiction has not been acquired.  See,  Old Wayne Mut Life Asso.
v. McDonough, 204 U.S. 8, 51 L.Ed.345, 27 S.Ct. 236.  Hence a fact
connected with jurisdiction to render a judgment may not be in the
face of statements to the contrary in the record.

### FAILURE TO ESTABLISH FEDERAL INTERSTATE COMMERCE NEXUS

33.

Defense counsel was ineffective by failing to raise or challenge
the governments lack of Federal Subject Matter Jurisdiction over the
alleged prohibitive acts charged against the petitioner.

34.

That, **defense counsel failed ab initio** to raise or challenge
that the Federal Statutory Provisions under which the Petitioner is
charged failed to contain language of an interstate commerce nexus.
the enumerated subsection under which the Petitioner is unlawfully
incarcerated and detained of his Liberty, possess no language which
could be construed as importing, interposing or incorporating a
Commerce Nexus.  Thus, the language of the statute does not grant
federa subject  matter jurisdiction, nor grant formal notice to the
accused party that an alleged violation of **18 USC §922(g) and §924(e)**
also invokes an uncharged violation of the federal Interstate Com-
merce statute, even though no prohibitive acts moved beyond the borders
of the sovereign state or across state line or international borders.
The Federal Governement does not have a general police power, thereby
the legitimate application of **Title 18 USC §922(g) and §924(e)** may
only be applied if ....

connected to an alleged violation of the Interstate Commerce statute.

35.

Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d. 252 (1960) at 857. The Supreme Court stated that, " The essential element was the allegation of an effect on Interstate Commerce which provided the court with (subject matter) jurisdiction" over the alleged prohibitive acts. Where the instant matter is concerned, the government has failed ab initio to establish that the prohibitive conduct of the petitioner, moved beyond the border of the sovereign state, thus in the clear absence of a commerce charge, the government failed to establish Federal Subject Matter jurisdiction over the alleged offense.

36.

Under our federal system, the "States possess primary authority for defining and enforcing the criminal law." See, Brecht v. Abrahamson, 507 U.S. 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993),quoting: Engle v. Isaac, 456 U.S. 107, 71 L.Ed.2d 783, 102 S.Ct. 1031, 162 ALR 1330 (1945)(plurality opinion) "our National Government is one of delegated powers alone. Under our federal system the administration of criminal justice rests with the states except as Congress, acting within the scope both delegate powers has created offenses against the United States." When Congress criminalizes conduct already denounced as criminal by the State it affects a change in the sensitive relation between federal and state criminal jurisdiction. United States v. Unmans, 410 U.S. 396 441-412, 35 L.Ed.2d 379, 93 S.Ct. 1007 (1973). quoting, United States v. Bass, 404 U.S. 336, 349 30 L.Ed.2d 488, 92 S.Ct. 515 (1971). It's obvious the government would have to acknowledge that 18 USC §922(g) and §924(e) displaces state policy.

kin that its prohibitions is being used in every State. 18 USC §922(g)
and §924(e), is now being used outside its scope of intended use by
inappropriately overriding State law.  By imposing higher penalties
and establishing mandatory penalties for the same offenses that the
State already charges.  The policies reflected in these provisions
could legitimately be adopted by the States, but they should not be
imposed upon the States by Congress.  By the government's use of
these two statutes outside its scope and its intended use two we have
a system that can punish the same act by different indiviuals with
different and more selective punishment.  Thus, the abuse-mentioned,
defendant in the case also charges the government was selective by
going outside its jurisdiction which was clearly spelled out by the
99th Congress 2d Session, of the Federal Statutory Provision under
which the Petitioner is alleged to have violated the act in question
to determine, whether it applies solely within the jurisdiction of
the United States.  Analysis of the operative sections of the act,
particularly the section at issue herein, clearly reveals that there
is nothing, which idnicates that the act applies anywhere but within
United States territories and enclaves.  There simply is no statutory
language expressly stating that the act applies "extra jurisdiction-
ally."  Further, the Federal Statutory Provisions which are an issue
(§2113(a)(d) of Title 18) totally fail to mention or refer to "in-
terstate commerce" or otherwise connect the provisions of this act
to congressional interstate commerce powers.  This is particulary
apparent from a review of Section §922(g) and §924(e) mention nothing
reference to interstate commerce.  It should be noted that in other
criminal acts Congress statutorily bases such acts upon it's "inter-
state commerce" powers: See, 18 US.C. Section 659, 660, 842, 844,
875, 922, 1231, 1301, 1343, 1365, 1761, 1951, 1953, 1962, 1992, 2101,

///// - 24  Memo. of Law with Incorporated Points and Auth. - N

2251, 2312, 2316, 2317, 2421, and 2422.

37.

The Petitioner asserts prosecutorial misconduct and plain error, 52(b) F.R.C.P., in that the application was not within the scope of Rule 7(c)(1), F.R.C.P. to the indictment in which was an amendment to cure the jurisdiction requirement; the indictment failed to explicitly, allege a (nexus) to commerce. See, **United States v. Knowles**, 29 F.3d 947, 952 (5th Cir. 1994).

38.

The Petitioner stands firm on his assertion that he was highly prejudiced by the prosecutor, not qualifying the jurisdiction nexus in the statute, to the Grand Jury. The Second and Third Circuit is on record as expressing the view that "when the word or phrase is used in the Sect. of the "Act" more than once, and the meaning is clear as used in one place." **Meyer v. United States**, 175 F.2d 45, 47 (2nd. Cir. 1949), quoting, **Lewellyn v. Nunez**, 573 F.2d 769 (2nd Cir. 1978), and, **C.I.R. v. Ridgeway's Estates**, 291 F.2d 257 (3rd Cir. 1961). It is elementary principal of criminal pleading, that where the definition of an offense, whether it be common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the specifics it must descent to a particulars, **United States v. Crikshank**, 92 U.S. 542, 558, 23 L.Ed. 588, 593. An indictment not framed to appraise the defendant with reasonable certainty, of the nature of the accusation against him, and it's jurisdiction to sustain those accusations is defective, although it may follow the language of the statute. See, **United States v. Simmons**, 96 U.S. 360, 362, 24 L.Ed. 819, 820. In as in-

dictment upon statue, it is not sufficient to set forth the offense
in the words of a statute, unless those words of themselves fully,
directly, and expressly, without any uncertainty or ambiguity, set
forth all the elements necessary to constitute the offense intended
to be punished.  See, **United States v. Carll**, 105 U.S. 611, 612, 26
L.Ed. 1135,  certainly the jurisdictional nexus, constitutes one of
the elements.  Undoubtedly the language of the statute may be used
in the general description of an offense, but it must be accompanied
with such a statement of the fact and circumstances as well inform
the accused of the specific offense, coming under the gerneral des-
cription with which he is charged, (an indictment that fails to state
its jurisdistion nexus in the pleadings or statute, certainly would
not be informing the accused of the above provisions).  For similar
views see, **United States v. Hess**, 124 U.S. 483, 487, 31 L.Ed. 516,
518, 8 S.Ct. 543; **Blitz v. United States**, 153 U.S. 308, 315, 38 L.Ed.
725, 727, 14 S.Ct. 924; **Keck v. United States**, 172 U.S. 434, 437,
43 L.Ed. 505, 507, 19 S.Ct. 254; **Morissette v. United States**, 246,
270 note 30, 96 L.Ed. 288, 304 S.Ct. 240, cf. **U.S. v. Petrillio**, 332
U.S. 1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538.  That these
basic principals of fundemental fairness retain their full vitality
under modern concepts of pleading and specifically  under Rule 7(c)
of the Federal Rules of Criminal Procedure.  In this case at bar, a
mere citation (such as the government used in this case) to the ap-
plicable statute does not give the defendant notice of the nature
of the offense.  An indictment that must rely on a statutory citation
does not fully, directly, and expressly, without any uncertainty or
ambiguity set forth all the elements (such as jurisdiction) necessary

to constitute the offense intended to be punished (or to sustain the charges). See, **Hamling v. United States**, 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed.2d. 590 (1974). Furthermore, a statutory citation does not ensure that the Grand Jury has considered and found all essential elements such as (jurisdiction) of the offense charged. It therefore fails to satisfy the Fifth Amendment guarantee that no person be held to answer for an infamous crime unless of indictment of a Grand Jury. See, **United States v. Pupo**, 841 F.2d 1235 (4th Cir. 1988) quoting, **United States v. Hooker**, supra. at 841 F.2d 1225 (4th Cir. 1988). As stated in **Hooker**, when an indictment fails to include as essential element of the offense charged, it thereby fails to charge any federal offense and conviction under the indictment may not stand. A Grand Jury in order to make the ultimate determination, must neceassarily determine, what gives the government jurisdiction to sustain, or bring these charges. To allow the prosecutor, or the court to make a subsequent guess as to what was in the minds of the Grand Jury at the time they returned the indictment  would deprive the defendant of a basic protection which guarantee of intervention of a Grand Jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by a Grand Jury or perhaps, not even presented to the Grand Jury which indicted him such as this case now, before this court, the jurisdiction nexus needed and required certainly was never presented to the defendant's Grand Jury. For similar views see, **Orfield Criminal Procedure from Arrest to Appeal 243**. This underlying principal is reflected by the settled rule in the federal courts that an indictment may not be amended excpet by resubmission to the Grand Jury unless the charge is merely a matter of form, **Ex Parte Bain**, 121 U.S. 1, 30 L.Ed. 849,

7 S.Ct. 781; <u>United States v. Norris</u>, 821 U.S. 619, 74 L.Ed. 1076,
50 S.Ct. 424, <u>Stirone v. United States</u>, 361 U.S. 212, 4 L.Ed.2d., 80
S.Ct. 270.  If it lies within the province of a court to amend an
indictment to suit its own notion of what ought to have been, when
such allegation of a commerce nexus is not submitted to the Grand
Jury, neither the government or court has the authority to amend an
indictment to incorporate  the crucial missing element.  The great
importance which the common law attaches to an indictment by a Grand
Jury, as a prerequisite to a prisoner's trial for a crime and without
which the Constitution says no person shall be held to answer, may
be frittered away until its value is almost destroyed.  any other
doctrine would place the rights of the citizens which were intended
to be protected by this Constitutional provision, at the mercy or
control of the court or prosecuting attorney; for if it be once held
that the charges can be made by the consent or the order of the court
in the body of theindictment as presented by the Grant Jury, and the
prisoner can be called upon to answer to the indictment as thus
changed, the restriction which the Constitution places upon the power
of the court, in regards to the prerequisite of an indictment, in
reality no longer exists.  **Ex Parte Bain, supra (121 U.S. at 10. 13).**
This court must be aware that "the very purpose of the requirement
that a man be indicted by a Grand Jury is to limit his jeopardy to
offenses charged by a group of his fellow citizens acting independ-
ently of either prosecuting attorney of judge."  See, **Stirone v.
United States, supra.  (361 U.S. at 218).**

## LACK OF ADMINISTRATIVE AGENCY JURISDICTION
### OVER LOCUS IN QUO

39.

Defense counsel was ineffective by failing to raise or challenge that no amendment to the Constitution can be found to provide for the unbridled, nationwide application of the Federal Statutory Provisions under which the Petitioner is charged.

40.

The Constitution for the United States created a government which has jurisdiction over certain enumerated subject matter. It is only in these areas that Congress can enact laws, and when they do, the Federal Courts are to enforce the law. But when laws do not come from an enumerated power, the Federal Courts are to prevent the U.S. Government or Congress from applying them.

41.

The Federal Constitution prescribes what the "jurisdcition" of the Federal Government is by the enumerated powers. That government can regulate foreign and interstate commerce, fix the standards of weights and measurements, establish uniform laws on bankruptcies, coin money and provide for the punishment of counterfeiting of the coins and securities of the United States protect the arts and sciences by copyrights and patents, punish for piracies and felonies committed on high seas, raise and support an Army and Navy, and lay and collect direct taxes by apportionment, and indirect taxes by exercise, duties, or imports.

42.

This is about the extent of the legitimate jurisdiction of the Federal United States Government. It is only in these areas, supra, that a "crime (or offense) against the Federal United States" can exist, and this is so only when Congress actaully passes a Law in one of these areas. But an act committed within a State, whether

with honest or criminal intent, cannot be made an offense against the United States unless it has some relation to the execution of a power of Congress, or to some matter within the jurisdiction the United States. **United States v. Fox**, 95 U.S. 670, 672 (1877). [T]he courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatsoever. The criminal jurisdiction of the courts of the United States is wholly derived from the statutes of the United States. **Manchester v. Massachusetts**, 139 U.S. 240, 262 (1890): **United States v. Flores**, 289 U.S. 137, 151 (1932). Acts of Congress, as well as the Constitution, must generally unite to give jurisdiction to a particular court. **United States v. Beford**, 27 Fed. Cas., **pg. 91, 103 Case No. 15,867 (1847).**

43.

The Federal Courts only have jurisdiction in matters involving an "offense against the United States," and nothing can be an offense against the United States unless it is made so by Congressional Act pursuant to the U.S. Constitution. There is no other source from which Congress can get authority to make Law, including the Common Law. Thus, it has been said that, "There is no Federal Common Law."

44.

But the better way of stating this is to say, "There are no

Common Law offenses (or crimes) against the United States." <u>United States v. Britton</u>, 108 U.S. 199, 206 (1882); <u>United States v. Eaton</u>, 144 U.S. 677, 687, (1897); <u>United States v. Gradwell</u>, 243 U.S. 476 485 (1916); <u>Donnelley v. United States</u>, 276 U.S. 505, 511 (1927); <u>Jerome v. United States</u>, 318 U.S. 101, 104 (1942); <u>Norton v. United States</u>, 92 Fed.2d 753 (1937). In other words the Common Law is not a source for criminal jurisdiction as it is in States. <u>United States v. Grossman</u>, 1.Fed.2d 941, 950-51 (1924).

45.

By "jurisdiction" is meant the authority of the federal courts to hear and decide a matter. thus, it is even more correct to say that, "The federal courts have no jurisdiction of Common Law offenses, and there is no jurisdiction of Common Law offenses, and there is no abstract pervading principal of the Common Law of the Union under which we (federal courts) can take jurisdiction." <u>State of Pennsylvania v. The Wheeling E. Bridge Co.</u>, 13 how. (54 U.S.) 518, 563 (1851).

46.

If Congress tries to make a Common Law offense a crime (such as Libel, Drugs, Theft, Burglary, Murder, Kidnapping, Arson, rape, Abortion, Fraud, etc.), having no relation to an enumerated power it would simply be an "unconstitutional" act. Congress can declare nothing to be a crime except where it is based upon a delegated power. Thus, the only thing that can be a crime against the "United States" is that which comes from the U.S.Constitution. These concepts were stated early on by the U.S. Supreme Court.

> " In relation to crimes and punishments, the objects of the delegated
> powers of the United States are enumerated and fixed. Congress may

provide for the puishment of counterfeiting the securities and current
coin of the United States, and may define and punish piracies and fel-
onies committed on the high seas, and offenses against the law of nations.
**Art. §8** but there is no reference to a Common Law Authority. Every power
is [a] **matter** of definite and positive grant; and the very powers that
are granted cannot take effect until they are exercised through the
medium of a law. **The United States v. Wortall**, 2 Dall. (2 U.S.)
384, 391 (1798).

47.

A Constitution is not to be made to mean one thing at one time,
and another at some subsequent time when the circumstances have so
changed, as perhaps to make a different rule in the case seem des-
irable. A principal share of the benefit expected from written
constitutions would be lost if the rules they establish were so
flexible as to bend to circumstances or be modified by public opin-
ion.    [A] court of legislature which should allow a change in public
sentiment to influence it in giving to a written consitution a con-
struction not warranted by the intention of its founders, would be
justly chargeable with reckless disregard of the official oath.
(28 U.S.C. §453 - 18 U.S.C. §1621) and public duty; and if its course
could become a precedent, these instruments would be of little avail.
What a court is to do, therefore, is to declare the Law as written.
**T.M Cooley. A Treaties on the Constitutional Limitations, 5th Ed.,**
**pp.54, 55**, rather than be swayed by political  ambition and the un-
lawful usurpation of police powers.   Chief Justice, John Marshall
stated:

> We [Judges] have no right to decline the exercise of jurisdiction which
> is given, that to usurp that which is not given.  the one or the other
> would be **Treason** to the Constitution. **Cohens v. Virginia,** 6 Wheat (19)
> **U.S. 264, 404 (1821).**

///// - 32   Memo of Law with I

48.

The United States Code was approved by an Act of Congress on June 30, 1926 (44 Stat. Part I). The code is assembled and revised under the supervision of "The Committee on the Judiciary of the House of Representatives". The main work of revision is done by a subcommittee or office of this committee called "the Office of the Law Revision Counsel of the House of Representatives." It consists of an appointed supervisor, some memebers of Congress, some volunteer Lawyers, and persons form West Publishing of St. Paul, Minnesota.

49.

When the U.S. Code was first published, it never was stated to be the official laws of the United States. Rather, it was stated that the Code was a "Restatement" of law, or was only "prima facie evidence of the laws of the United States." On this matter the court stated:

> The United States Code was not enacted as a statute, nor can it be construed as such. It is only a prima facie statement of the statute law.... If construction is necessary, recourse must be had to the original statutes themselves. **Five Flages Pig Line Co. v. Dept. of Transportation**, 854, F.2d 1438, 1440 (1988); **Stephan v. United States**, 319 U.S. 415, 426 (1943)' **44 Stat Part 1, preface; Murrell v. Western Union Tel. Co.**, 160 F.2d 787, 788, (1947); **United States v. Mercur Corp.**, 83 F.2d 178, 180 (1936).

50.

this tells us that the United States Code, as originally established, was not on an equal plain with the "original statutes" or the **Statutes at Large**. thus, the Code was not **True Law**. With the state of regular use of the U.S. Code, numerous problems arose in that it contained mistakes, errors and inconsistencies as compared

///// - 33  Memo. of Law with Incorporated Points and Auth.

to the Statutes at Large    Thus, in 1947, Congress enacted several
of the Titles into "positive law," such as the Act:  "To codify and
enact into positive law, **Title 1 of the United States Code,**" In doing
so they devised some new terminology; which is set out under **61 Stat.**
633, 638-644; 1 U.S.C. §204(a).

### 51.

Look back at the cases cited, which state that the criminal jur-
isdiction of the United States exists only by Acts of Congress pur-
suant to the Constitution.  In the nature of a question of law, if a
federal court were asked whether the Code cited in an indictment is
an Act of Congress, the court could not rightfully say it is, because
the Code citation contains no congressional enacting clause for that
citation as required  by **61 Stat.** 633, 634, §101.  If no such enacting
clause appears on the face of the law, it is not an act of Congress
and **no** criminal jurisdiction exists wihtout a bona fide Act of Cong-
ress.  The argument in such a case is that the indictment does not
set forth a case arising under the Constitution, as there is no Act
of Congress with a duly required enacting clause.  Thus, there is **no**
subject matter jurisdiction pursuant to the federal judicial power
defined in the nature of **Article III, §2 of the Federal Constitution.**

### 52.

No where does it say in the Code, or in the pronouncements by
Congress or the Courts, that the laws in the U.S. Code are Acts of
Congress.  In fact, the Code is always regarded as something differ-
ent from the **Statutes at Large.**

> **But no one denies that the official source to find United
> States law is the <u>Statutes at Large</u> and the Code is only prima
> facie evidence of such laws.**

54.

An invalid, unconstitutional or non-existent statute affects the validity of the "charging document," that is, the complaint, indictment or information.  If these documents are void or fatally defective, there is no subject matter jurisdiction since they are the basis of the court's jurisdiction.  when an accused-party is indicted under a not-yet-effective or unenacted statute, the charging documents is void.

55.

Congress has no general power to enact police regulations operative within the territorial limits of a State.  **Slaughter-House Cases**, 83 U.S. 36; **United States v. Dewitt**, 76 **U.S. 41**; Gibbons v. Ogden, 22 **U.S. 1**; and it cannot take this power from the states or attempt any supervision over the regulations of the States established under this power, **Keller v. United States**, 213 U.S. 138.  The exercise of the police power by a state is beyond interference by the Federal Government.  See also, **People v. Godfrey**, 17 Johns 225, at 233 (N.Y. 18181); **United States v. Bevans**, 16 (3 Wheat) 336 (1818); **Adams v. United States**, 319 U.S. 312 (1943), and **Caha v. United States**, 152 U.S. 211, 215 (1894), Supreme Court authorities, which contain language that leaves no room for misinterpretation of mis-application.

## UNPROMULGATED REGULATORY STATUTES

56.

**defense counsel was ineffective by failing to raise that there are no public implementing regulations in the Code of Federal Regulations (CFR) for the Federal Statutory Provisions under which the petitioner is charged.**

///// - 35  Memo. of Law with Incorporated Points and ...

57.

That, defense counsel failed ab initio to raise or challenge the fact that the Federal Statutory Provisions under which the Petitioner is charged are unenacted by Congress, unpromulgated in the Federal Register and possess no public implementing authorities in the Federal Code of Regulation. The Petitioner would like the record to reflect that the Federal Statutory Provision under which he is charged, are in fact commercial regulatory statutes which have not promulgated in the Federal Register or the Code of Federal Regulations, as required under 44 U.S.C. §1505, et seq., and 5 U.S.C. §601. Therefore, it is arguable that this court has jurisdiction to adjudicate sanctions for violation of Unpromulgated Regulatory Statutes. The petitioner thus advances with supporting authorities that no documentation can be shown that the enumerated subsections under which the accused-party is charged, have published regulations, thus these particular Federal Statutory Provisions 18 USC §922(g) and §924(e), lack the force and effect of Law, when mis-applied beyond the parameters of Rule 54(c) - Acts of Congress, of Federal Rules of Criminal Prosedure.

58.

In Foley Brothers v. Filardo, 336 U.S. 281 (1949), the high court stated, "It is well established as a principal of law, that all federal legislation applies only within the territorial jurisdiction of the (federal) United States unless a contrary intent appears." In order for a contrary intent to be facilitated, delegations of authority and implementing regulations must be published in the Federal Register.

59.

Fortunately, there is a readily available method for discerning which Statute at Large, and which Statute contained within the 50 Titles of the United States Code, possess either restricted application, or general applicability to the several States and the population at large.   This method is through consulting the Parallel Tables of Authority and Rules which begins at page **709 of the 1998 Index Volume to the Code of Federal Regulations.**   Its authoirty is located at 1C.F.R.§8.5(a).

60.

The **Administrative Procedures Act**, located at **5 U.S.C. §§552 ET SEQ.**, and the Federal Register Act, located at **44 U.S.C. §1505 et seq.**, provide the means for determining which Statutes in any given act of Congress are applicable, within federal areas, and which Statutes have "general" applicability within the territories, enclaves, and insular possessions, belonging to the federal United States.   At §1505(a)(1), of Title 44, of the United States Code, it is found that if a Statute is not published in the Federal Register, the application of the statutory provision is restricted to federal agencies, or persons acting in their capacity as officers, agents or employees of the federal governement.

61.

Positive Law is the irrefutable Law of the United States of America, which has withstood the test of time.   However, when federal statutory provisions are not duly and properly promulgated in accordance with the law, then such Statutes lack the force of law, and may not be applied capriciously or arbitrarily.

62.

In <u>Hotch v. United States</u>, 212 F.2d. 280 (9th Cir. 1954), at
p.283, the court stated:

> " Under our system of law, no act is punishable as a crime unless
> it is specifically condemned by the Common Law or by a statutory
> enactment of the Legislature (22 C.J.S. Crim. Law, see 17).
> Therefore, the Administrative Procedure Act and the Federal Register
> Act must be read as a part of every Congressional delegation of
> authority unless specifically excepted.  Those acts require public-
> ation, irrespective of actual notice, as a prerequisite to the
> "issuance" of a regulation making certain acts criminal. If certain
> acts have not been made crimes by duly enacted law, the knowledge of
> their contemplated administrative proscription cannot subject the
> informed person to criminal prosecution. **While ignorance of the law
> is no defense, it is conversely true that a law which has not been
> duly enacted into positive law, is not a law of general applicability
> and therefore, a person who does not comply with its provisions cannot
> be guilty of any crime.**"

63.

In **Wei v. Robinson**, 246 F.2d 739 (7th Cir. 1957). cert. den. 78
S.Ct. 144, 355 U.S. 879, the Supreme Court stated, "Contents of the
Federal Register and the Code of Federal Regulations are **prima facie
evidence** of the original text and are required to be judicially noted."
In **Wolfson v. United States**, 492 F.2d 1386, 204 Ct. Cl. 83 (1974).
"When regulations are published in the Federal Register, they give
legal notice of their contents to all who may be affected thereby."
In **Shafer v. United States**, 229 F.2d 124, cert. den. 76 S.Ct. 78,
351 U.S. 931, the Court stated, " The publication of a document in
the Federal register creates a rebuttable presumption of validity."
**Northern States Power Co. v. Rural Electrification Administration,**
**248 F.Supp 616 (1965)**, the Court stated, "Rules by governemnt agency
of general applicability and published in accordance with the Federal

Register Act have force and effect of Statute Law and are binding on those publishing them as well as the general public until such time as they be repealed or modified. Fed. Reg. Act §1, et seq., 44 U.S. C.A. §301 et seq.

64.

In **United States v. Mersky**, 361 U.S. 431, 438 (1960), the Supreme Court stated:

> " Once promulgated, these regulations called for by the statute itself have the force of law, and violation thereof incur criminal prosecutions just as if all the details have been incorporated into the Congressional language. The result is that neither the Statute nor the Regulation are complete without the other, and only together do they have any force in effect; therefore, the construction of one necessarily involves the construction of the other, and in the context of criminal prosecutions, the rule of strict construction must be applied in the interpretation of an Administrative Regulation to which penal consequences attach under the Statute authorizing the promulgation of the regulation, as well as the construction of the statute."

65.

In **United States v. Reinis**, 794 F.2d 506 (9th Cir. 1986), the Court stated, "An individual cannot be prosecuted for violating the "Act" unless he violates an implementing regulation." See also, **United States v. Two Hundred Thousand Dollar**, 590 F.Supp 846 (S.D. Fla. 1984), specifically stated at 1 C.F.R. §1, "All regulations must be published in the Federal Register to have general applicability and legal effect." Regulation; published by the Secretary at 26 C.F.R. 601-702(ii), acknowledge the effect of failure to publish by stating, "Thus for example, any such matter which imposes an obligation and which is not so published or incorporated by reference will not adversely change or affect a persons rights."

66.

The Supreme Court stated in <u>United States v. Welden</u>, 377 U.S. 95 (1964), that, "Under 1 U.S.C. §204(A)), which provides that the United States Code establishes prima facie the laws of the United States and that when Titles of the Code are enacted into positive law, the text thereof is legal evidence of the law contained therein, the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent. If construction of a section of the United States Code which has not been enacted into positive law is necessary, recourse must be had in the Original Statutes themselves and a changed arrangement made by the codifier without the approval of Congress should be given no weight. <u>Stephan v. United States</u>, 319 U.S. 423 (1943; <u>Best Foods v. United States</u>, 147 F.Supp. 749, 37 Cust. Ct. 1 (1956); <u>Peart v. Motor Vessel Bering Explorer</u>, 373 F.Supp. 927 (1974)).

67.

The law provides that when implementing regulations are at variance with the statutory provisions of which are intended to promulgate that they fail to give proper notice under the due process clause of the federal constitution of the "Fair Notice," Doctrine, set out under <u>United States v. Nevers</u>, 7 F.3d 59 (5th Cir. 1993). Administrative regulations, in order to be valid, must also be consistent with, and not contrary to, "The statute under which they are promulgated." <u>United States v. Larionoff</u>, 431 U.S. 864, at 973, 97 S.Ct. 2150, at 2156, 53 L.Ed.2d. 48 at 56. "A regulation beyond the scope of, or our   harmony with, underlying legislation is a mere nullity."  Id. at 873 n.12, 97 S.Ct. at 2156, n.12,; <u>Manhattan</u>

Gen. Equip. Co v. C.I.R., 297 U.S., at 134, Neel v. United States,
266 F.Supp., at 10. "To make this determination, it is necessary
for the court to square the regulations against the statute that it
purports to implement, comparing the sphere of authority of each..
Western Union Teleg. Co. v. F.C.C., 541 F.2d 346, 354 (3rd Cir. 1976),
cert. den. 429 U.S. 1029 (1977). An Administrative Regulation must
be reasonably related to advancing the purpose of the enabling leg-
islation." **Morning v. Family Publications Services, Inc.**, 411 U.S.
356, 369 (1973). In the framework of criminal prosecution, unclar-
ity in the statute or a regulation issued thereunder is, enough to
resolve doubts in favor of the defendant. **United States v. Mersky**,
supra.


### FATAL DEFECTS IN THE GOVERNMENTS CHARGING INSTRUMENTS

68.

**The defense counsel was ineffective by failing to raise or chal-
lenge the self-evident and self-declaring defects in the government's
charging instruments.**

69.

The Petitioner argues that an indictment which fails to allege
all of the elements of the alleged offense is defective and must
be dismissed, where one of the elements is crucial and is in fact
in sine qua to the legitimate application of the subsequent charged
offense. The legitimate application and charging **18 USC §922(g) and
§924(e)**, of the United States Code, must be connected to an alleg-
ed violation of the Federal Interstate Commerce statute, otherwise
federal subject matter jurisdiction is missing. See **United States
v. Pupo**, 841 F.2d 1235. The Petitioner argues that an indictment

///// - 41  Memo of Law with Incorporated Points

fails to apprise the accused-party of what he must be prepared to defend against. Accordingly, an allegation of Interstate Commerce is jurisdiction and as such is essential element in appraising the Petitioner of the Grand Jury's authority to indict under 18 USC §922(g) and 924(e) Title 18. See, **United States v. Young**, 730 F.2d at 224 (the particular predicate for jurisdiction is essential element of offense); **United States v. McCray**, 665 F.2d 664, 678, 679 (5th Cir. 1982). The constitutional rights of an accused are violated when modification, at trial or by court of appeals acts to broaden the charge contained in the indictment such modifications contradict the very purpose of the Fifth Amendment Grand Jury requirement. See, **United States v. Stirone**, 361 U.S. 212, 4 L.Ed.2d 252, 80 S.Ct. see at 273 (expressing similar views). The failure of the government to include in the indictment any charge that the Petitioner's conduct affected interstate of intra-state, or any commerce was not cured by the citation of the Statutes. In the sufficiency of an indictment it is the statement of facts in the pleadings rather than the statutory Citation that is controlling. See, **United States v. Wuco**, 535 F.2d 1225 (9th Cir. 1976).cert. den. 429 U.S. 978, 97 S. Ct. 488, 50 L.Ed.2d 586 (1976) It is elementary that every ingredient of the crime **must** be charged in the bill, with a general reference to the provisions of the statute being insufficient. See, **Hale v. United States**, 89 F.2d (4th Cir.) and **United States v. Berlin**, 472 F.2d 1002, 1007 (2nd Cir. 1973); also **United States v. Beard**, 414, F.2d 1014, 1017 (3rd Cir.). This indictment under §922(g), and §924(e), fails to allege a nexus between Petitioner's conduct and interstate commerce in dealing with an indictment where no alleged commerce allegation is made. The Petitioner argues this court, should hold that a lack of commerce allegation in the indictment, precludes

it from considering whether a conviction under 18 USC §922(g) and §924(e) can be sustained even if the government alleged and proved that these offenses had a nexus to commerce. See, **United States v. Lopez,** at 2 F.3d 1342, (the holding of the 5th Cir. Court of Appeals).

70.

The federal government's failure to establish proof of other evidence of jurisdiction or ownership over each and every geographic location in which the alleged criminal activities took place divested the court of jurisdiction over the subject matter and mandates reversal. Where the lands were never ceded to the United States, and the locations which lie within the territorial boundaries of the states and not the Federal Government. Then the Federal Government lacks jurisdiction over any criminal activities which lie therein. Thus, the government's view that §922(g) and §924(e), can be used and applied to all crimes that occur any place, or in any geographic location, even though the statute lacks a commerce nexus, and the government's failure to allege any effect on commerce or other basis for jurisdiction, and not withstanding the states sovereign jurisdiction over its territory, are contrary to the Constitution of the United States. Such a position would ask this court to infer that congressional laws may be converted to general police power and authority, without statutory or constitutional support which only the States may properly possess.

71.

It is firmly established and accepted fact that federal government's power, authority, and jurisdiction does not extend beyond the boundaries and parameters of the embodiment of the Federal Government itself, i.e. "territory, lands, property owned by the Federal Gov-

///// - 43  Memo. of Law with Incorporated Points and Auth

ernment over which jurisdiction has been ceded by the state leg-
islature." However, the Federal Government does not have the power,
nor does the Constitution grant the power to punish persons for var-
ious other crimes over which jurisdiction is retained by the States.
Preventing and prosecuting such various crimes is much the business
of the States than the Federal Government. **Arizona v. Manypenny**,
451 U.S. 232, 101 S.Ct. 1657. It is of the utmost importance and
relevance to note, retain, and embellish within the mind that the
territorial jurisdiction of the United States is limited to the
Federal Enclaves. **United States v. Fessler**, 781 F.2d 384, 386 (1986).
In the instant matter, the facts and offense alleged do not conform
with or meet any jurisdiction requirements described within and in
the foregoing.   Thus, without proper jurisdiction of the subject
matter, any prosecution or continuation of this matter is unlawful
at its inception and duration.  To bring the offenses within the
jurisdiction of the federal courts, it must have been committed out
of the jurisdiction of any State; it is not the offenses committed,
but rather the place in which the offense is committed. **People v.
Godfrey**, 17 Johns 225 at 233.  In the doctrine of "Lex Loci" or the
"Law of the place" determines that standard of conduct and governs
as to matters within the right of action.  See, **Gray v. Blight**, 112
F.2d 696.  While no one disputes the proposition that " the Consti-
tution created a Federal Government of limited powers," **Gregory v.
Ascroft**, 501 U.S. 452, 458, 115 L.Ed.2d 410, 111 S.Ct. 2395 (1991);
and that while the Tenth Amendment makes explict "that the powers
not delegated to the United States by the Constitution nor prohib-
ited by it to the States, are reserved to the States respective, or
to the people."

72.

The argument is the division of authority between the State and Federal Government, and the Federal Government's jurisdiction in sustaining conviction under the Federal Statutory provisions in which the Petitioner is charged §922(g) and 924(e),... The government's broader reading of these statutes would mark a major inroad into the domain traditionally left to the States. If a power is delegated to Congress in the Constitution (such as those enumerated), the Tenth Amendment expressly disclaims any reservation of that power to the States. If a power is an attribute of States sovereignty (such as this one we are arguing), resevered by the Congress. See, **United States v. Oregon**, 366, U.S. 643, 649, 6 L.Ed.2d 575, 81 S.Ct. 1278 (1961), **Case v Bowles**, 327 U.S. 92, 102, 90 L.Ed. 552, 66 S.Ct. 438 (1946); **Oklahoma ex rel Phillips v. Guy F. Atkinson Co.**, 313 U.S. 508, 534, 85 L.Ed. 1487, 61 S.Ct. 1050 (1941).

73.

It is this sense that the Tenth Amendment "States but a truism that all is retained which has not been surrendered." **United States v Darby**, 312 U.S. 100, 124, 85 L.Ed. 609, 61 S.Ct. 451, 132 ARL 1430 (1941). As Justice Story put it, "this amendment is a mere affirmation of what, upon any just reasoning is a necessary rule of interpreting the Constitution. Being an instrument of limited and enumerated powers, it follows irresistable, that what is not conferred is withheld and belongs to the States' authorities. 3.j. **Story Commentaries on the Constitution of the United States 752 (1833).** The argument this Petitioner brings to this court is the Federal Government did not have jurisdiction over the geographical location wherein the alleged activity took place, in land, which were never

ceded to the United States, the interstate commerce element becomes essential to establish jurisdcition and prove every element of the offense. Applying the rational of the Supreme Court in **United States v Mechanik**, 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50 (1989), and **United States v Hooker**, 841 F.2d 1225, like the decision in **Hooker** Petitioner maintains that the harmelss error analysis of **Mechanik**, cannot be applied here because the court had no jurisdiction to try the Petitioner on a count which failed to expressly allege an effect on inter or intra-state commerce. Jurisdiction is lacking if the indictment did not allege a federal crime, by means of a connection with Interstate Commerce. This action by the prosecutor, would certainly deprive the Petitioner the basic protection, which the guaranty of the intervention of a Grand Jury was designed to secure. For the defendant/petitioner could then be convicted on the basis of charges not found by and perhaps not even presented to the Grand Jury, which indicted him. See, **Orfield, Criminal Procedure from arrest to appeal, 243.** Petitioner now asserts his Fifth and Sixth Amendment Right of Due Process, in arguing that he was never indicted by his Grand Jury **for effecting any commerce!** Thus, failure to present this element or state it in the pleading of the indictment, preclude the Appellate Court from sustaining his conviction. For all these above reasons, Petitioner asks this Court to look carefully to the Constitution and the cited statutes. Petitioner asks this Court to invoke the doctrine of **Stare Decisis**: when a court has once laid down a principal of law applicable to a certain state of facts it will adhere to that principal, and apply it to all future cases, where facts are substantially the same regardless of

whether the parties are the same. The doctrine of Stare Decisis,
provides the means by which courts assure that the law will not
merely change erractically but will develop in principal and intel-
ligible fashion; the doctrine permits society to presume that bedrock
principal are found in law rather than in the proclivities of
individuals, and there by contributes to the integrity of our Con-
stitution system of government both in appearance and in fact.
Petitioner now invokes the doctrine of **stare Decisis** to his arguments
herein; "Any departure from the doctrine of Stare Decisis demands
special justification." **Arizona v. Rumsey,** 467 US 203, 212, 81 L.
467 U.S. 203, 212, 81 L.Ed.2d 164, 104 S.Ct. 2305 (1984); also
**Olson v. Kennedy,** 456 U.S. 667, 691 n.34, 72 L.Ed.2d 416, 102 SCt.
2083 (1982). Stevens J. concurring in judgment. **18 USC §922(g) and**
**§924(e), id** Congress wanted this statute to be used, outside of it's
territorial jurisdiction, such as anywhere or any place then it
would have drafted the needed provision, which certainly would have
included the Interstate Commerce nexus that is required. " federal
criminal statute intended to be enforced within the States exceeds
Congress' Commerce Clause authority." To uphold the government's
contention that it can bring criminal charges for crimes committed
within a State is to convert Congressional authority into police
power, which is only within the authority of the States. See,
**United States v. Lopez,** No. 93-1260, (decided April 26, 1995). In
**McCullough v. Maryland,** 4 Wheat 316 (1819), the Federal Government
had to acknowledge that it can only exercise power granted to it.
The enumerated presupposes something not enumerated. See, **Gibbons**
**v Ogden, supra at 195.** The Constitution mandates that Congress
cannot create or give itself plenary police powers over the State
territories. Congress must operate within the frame work of what

the Supreme Court defines the law to be.  See, <u>Marbury v Madison</u>,
1 Cranch 137.

74.

That, defense counsel failed at the sentencing of the Petitioner
to raise or challenge that §3551 of Title 18 applies only to those
who according to the language of the statute, supra had been found
guilty of any offense described in the Federal Statute...other then
an Act of Congress applicable exclusively in the District of Columbia.
Acts of Congress (Federal Law) are defined and circumscribed under
Rule 54(c) Federal Rules of Criminal Procedure.  Implementing reg-
ulations for **18 U.S.C. §3551** are at variance with their application
in the instant cause.  Where the instant matter is concerned, the
accused committed no violation of any properly enacted and duly
promulgated federal law within the legislative jurisdiction of the
Federal United States, nor within the parameters defined under the
implementing regulation for the Federal Sentencing provisions, thus,
the sentencing provisions set out under **18 U.S.C. §3551** do not apply
to the accused.  By consulting the **Parallel Tables of Authorities and
Rules 1997 Ed. at pg. 733**, it is found that the implementing regulation
for 18 U.S.C. §3551 are set out under 43 C.F.R. 9260-public lands,
Alaska, 36 C.F.R. 242-subsistence management regulations for public
lands Alaska, and 50 C.F.R. 100, (same as 36 C.F.R. 242).  Where
the instant matter is concerned the accused committed no violation
of any properly enacted and/or duly promulgated federal law within
the legislative jurisdiction of the Federal United States, nor
within the parameters defined under the implementing regulations
provisions, thus, the sentencing provisions set under 18 U.S.C.
§3551 do not apply to the accused.

75.

The court will find that the statutory provisions under which the U.S. District Court imposed the sentence against the accused (18 U.S.C. §3551) apply not to the Acts of Congress, which are applicable only in the District of Columbia. See, Rule 54(c).

76.

It may further be shown that the statutory provision, **18 U.S. C. §3551**, is at variance with its published implementing, thereby creating ambiguity as to its lawful authority and applicability over the accused.

77.

An invalid, unconstitutional or non-existent statute affects the validity of the "charging document," that is, the complaint, indictment or information. If these documents are void or fatally defective, there is no subject matter jurisdiction since they are the basis of the court's jurisdiction; when an accused-party is indicted under a not yet effective or unenacted statute, the charging document is void.

78.

The indictment or complaint can be invalid if it is not con- structed in the particular mode or form prescribed by the Consti- tution or Statute (42 C.J.S., **'Indictments and Information,'** §1, p.833). But it also can be defective and void when it charges a violation of a law, and that law is void, unconstitutional, unenacted, or mis-applied. If the charging document is void, the subject matter of a court does not exist. The want of a suffficient affidavit, complaint, or information goes to the jurisdiction of the court,

... and renders all proceedings prior to the filing of a proper
instrument void ab initio.  22 Corpus Juris Secundum, "Criminal Law,"
§324, p.390.

79.

One way in which a complaint, or indictment fails to charge a
crime, is by its failure to have the  charge based upon a valid or
duly enacted law.  Complaints or indictments which cite invalid laws,
or incomplete law, or non-existent law are regarded as being invalid
on their case, thus fatally defective.

80.

The crux then of this whole issue of jurisdiction revolves around
law, that is, the law claimed to be violated.  If one is subject to
a law, they are then under the jurisdiction of some authority.  If
a crime is a alleged but there is no law to form the basis of that
crime, there is no jurisdiction to try and sentence one even though
they are subject to the legislative body and the court.  There has
to be a law, a valid law, for subject matter jurisdiction to exist.
Laws which lack an enacting clause are not laws of the legislative
body to which we are constitutionally subject.  Thus, if a complaint
or information charges one with a violation of a law which has no
enacting clause, then no valid law cited.  If it cites no valid law
then the complaint charges no crime, and the court has no subject
matter jurisdiction to try the accused-party.

> [N]o authority need to be cited for the proposition that,
> when a court lacks jurisdiction, any judgment rendered by
> it is void and unenforceable ... and without any force
> or effect whatever. **Hooker v. Boles**, 346 F.2d 285, 286
> (1965).

81.

A judge or court may be in a legal sense immune from any claims
that it is guilty of wrong because of its improper exercise of jur-
isdiction.  However, it has no such protection where it lacks juris-
diction and the issue has been raised and asserted. When the lack
of jurisdiction has been shown, a judgment rendered is not only bold,
but is also usurpation.  Jurisdiction is a fundamental prerequisite,
and an usurpation thereof is a nullity.  **22 Corpus Juris Secundum,
"Criminal Law," §150 p. 183**  The excessive exercise of authority
has reference to want of power over the subject matter, the result
is void when challenged directly or collaterally.  If it has refer-
ence merely to the judicial method of the exercise of power, the
result is binding upon the parties to the litigation till reversed.
The former is usurpation; the latter error in judgment. **<u>Voorhees
v The Bank of the United States</u>**, 35 U.S. 449, 474-75 (1836), the
line which separates error in judgment from the usurpation of power
is very definite.

82.

This Honorable Court must be compelled to find as a Matter of
Law, that the Petitioner is in custody and detained of his Liberty
in violation of the Constitution of the United States of America,
where the foregoing and the Court's own record support that the
Federal Government lacked Federal Legislative jurisdiction over
the locus in quo, whereon the purported prohibitive acts were com-
mitted; and,

83.

That the government lacked Federal Subject Matter jurisdiction
where no prohibitive acts or conduct of the Petitioner moved be-

yond the borders of the sovereign state, nor was the Petitioner indicted via the government's charging instrument, for an alleged violation of the Federal Interstate Commerce Statute, thus, the Federal Government lacked **Federal Subject Matter jurisdiction**, a **sine qua non** to federal prosecution of the offense alleged against the Petitioner

## CONCLUSION

### 84.

Where the instant cause is concerned, the Federal Statutory Provisions under which the Petitioner is imprisoned and detained of HIS LIBERTY, have not been promulgated by Congress in the Federal Register (44 U.S.C. §1505), nor do such statutory provisions possess published implementing regulations in the Code of Federal Regulations, nor is there to be found an Amendment to the Constitution, ratified by the several sovereign states, to provide for nationwide application of these Federal Statutory Provisions.

### 85.

The Consitution of the United States of America, provides that it is only the Congress of the United States who has the authority to create and enact Federal Laws.

### 86.

The Statutory Provision under which the Petitioner is charged do not have implementing regulations in the Code of Federal Regulations; the section falls under 62 **Statutes at Large,** which have not been promulgated in the Federal Register by Congress, and fails to possess any published implementing regulation in the Code of Federal Regulations.

87.

There is no amendment to the Constitution ratified by three-fourths of the sovereign states to provide for nationwide jurisdiction and application of which the accused party is charged.

88.

The undersigned committed no violations of the Federal Interstate Commerce Statute, nor do the Federal Statutory Provisions under which he is indicted contain language which could interpose a commerce nexus. Thus there is no showing of Federal subject matter jurisdiction.

89.

The locus in quo where the alleged prohibitive acts of the undersigned took place is a geographical location not within the Legislative, Territorial or Admiralty jurisdiction of the Federal Government.

**WHEREFORE,** the court should be compelled to find as a Matter of Law that the petitioner committed no alleged prohibitive acts within the Legislative, Territorial, or Admiralty jurisdiction of the Federal United States, or within the reach of Interstate Commerce Clause statute, therefore the petitioner is unlawfully incarcerated and detained in violation of his secured Constitutional Rights by way of the Judgment of the court in want of jurisdiction. And the denial of the effective assistance of counsel, the petitioner must therefore, by law, be released and discharged from Federal custody, forthwith.

Dated: 10/23, 2006

Respectfully Submitted,

Gustavo T. Luna / Pro Se

///// 53 Memorandum of Law with Incorporated Points and Authorities- N

G
06-2085
RWR

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS**

Gustavo T. Luna

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 8888
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se Pr

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# 09054-051

**DEFENDANTS**

Alberto Gonzales, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

CASE NUMBER   1:06CV02085

JUDGE:  Richard W. Roberts

DECK TYPE:  Habeas Corpus/2255

DATE STAMP:  12/07/2006

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENS**
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 2241    Habeas Corpus

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint  **JURY DEMAND:** ☐ YES ☑ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction) NO ☐ YES ☑ NO   If yes, please complete related case form.

DATE 12.7.06   SIGNATURE OF ATTORNEY OF RECORD   WCD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd